The STATE of Ohio, Appellee,

v.

CZAJKA, Appellant.

[Cite as *State v. Czajka* (1995), 101 Ohio App.3d 564.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66323.

Decided March 6, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Michael Bednar,* Assistant Prosecuting Attorney for appellee.

*Fromson & Zukerman* and *Larry W. Zukerman,* for appellant.

PRYATEL, Judge.

Appellant, Vincent E. Czajka, appeals the jury verdict which found him guilty of abduction, assault and robbery of Donna Biven and guilty of felonious assault upon Carol Arvajeh. Appellant assigns five errors for review.

## I.  Statement of Facts

In July 1989, appellant, Vincent E. Czajka, met Donna Biven.  On June 3, 1993, appellant, who at that time resided in Chicago, Illinois, visited Biven in Bay Village, Ohio.  Appellant stayed with Biven for approximately eight days until she requested appellant to leave.  Shortly thereafter, appellant met and began staying with Carol Arvajeh and her daughter, Rose Arvajeh.

On the evening of July 21, 1993, appellant and Biven arranged to meet at the Varsity Club Tavern in Bay Village, Ohio.  After they met, Biven, in her rented Ford Tempo, drove him to another tavern nearby, named Preston's.  After staying for approximately two hours, she wanted to leave.  However, appellant refused to let her go until he was ready.  When appellant determined they would depart, he demanded that Biven take him to find crack cocaine.  When she refused, appellant began acting "like an animal," banging his fists and knees against the dashboard and windshield.  Biven pulled the car to the side of the road and exited the vehicle.

Appellant pursued Biven, arguing that she did not understand his need for crack cocaine and that if she refused, her father and brother would be hurt. With that threat in mind, Biven agreed to take him.  As she began walking back to the car, appellant grabbed her by the throat and choked her to the point of unconsciousness.  Upon her regaining consciousness, appellant pulled Biven up from the ground and stated, "Now do you understand?  Get in the car and do what you're told."  Appellant later told Biven that he "enjoyed ripping people's throats out."

Pursuant to appellant's instructions, Biven drove to a bank machine and withdrew $50 from her account for appellant and then drove to a gas station.  At the gas station, appellant entered into a shouting match with the attendant for having the station doors locked.  Believing appellant was intoxicated, the attendant called the Rocky River Police Department.  When the police arrived, appellant gave a phony name and date of birth.  One officer asked Biven if there was any problem, to which she replied there was not.  Biven testified that while she attempted to communicate to the officers with her eyes that she was in distress, she was too afraid to tell the police what was actually happening.  The police then sent appellant and Biven on their way.

After leaving the gas station, Biven drove appellant to the "projects" in the east side of Cleveland, Ohio where she believed appellant would be able to find the crack cocaine he sought.  There, the two found a man who claimed to know where appellant could buy the drug.  The man entered the back seat of Biven's car and directed them to a nearby building.  Appellant took the keys to the car and left Biven for close to twenty minutes while defendant and the man searched

for someone to sell them crack. At this time it was approximately 3:00 to 3:30 a.m.

Appellant came out of the building with a group of five to seven men. The man who brought Biven and appellant to the area told her that appellant was trying to sell her car for a rock of crack cocaine. Biven asked the man for help and he told her to come with him to his apartment. However, Biven thought it would be better not to go.

Appellant and a few other men entered the car and told Biven to follow the rest of the group to another bank machine on Euclid Avenue near 17th Street. Appellant again instructed Biven to withdraw $50. Biven returned to the car and found appellant in the driver's seat. Appellant, who was under the influence of crack, began driving in a reckless manner, exceeding the speed limit and running through numerous red lights.

Appellant eventually returned to the place they had originally met the group of men. Unable to purchase more crack, appellant was told of a party on East 55th Street where crack would be available. The group, including Biven, went into the building on East 55th Street. While inside, appellant smoked more crack while Biven stood by. After approximately twenty minutes, appellant instructed Biven to drive them back to her house and that he would then take her car to drop off one of the men from the party.

After Biven returned home, appellant ordered her once again to take him to a bank machine since he needed more money. Biven again went to a bank machine and withdrew $50, $40 of which she surrendered to appellant. The appellant then instructed her to drive home, where she was dropped off by the appellant and the other man. At approximately 10:00 a.m., appellant called Biven and told her she had better not do anything about what had happened the previous night.

Later that morning, Biven was contacted by James Larkin, an agent for the Federal Bureau of Investigation. Apparently, Agent Larkin had been involved in a high speed chase with appellant that morning. Agent Larkin abandoned pursuit after running the license plate number and determining that the chase might jeopardize the safety of others. Agent Larkin testified that although Biven eventually told him that she had lent the car to Vincent Czajka, she was very apprehensive about answering his questions. Agent Larkin testified "it was obvious that she was—there was something wrong. She was afraid to give me much information at all about the individual that had the vehicle." During this conversation, Biven did not tell Agent Larkin of the nightmare of the previous night.

Biven subsequently made arrangements with appellant to pick up her car. At this time, appellant apologized for what had happened and promised it would

never happen again. Appellant remained in contact with Biven and the two eventually met for lunch at the Varsity Club Tavern on Saturday, July 24, 1993. There, appellant, who appeared to have been drinking, told Biven he was going to leave town and take with him Rose Arvajeh, the daughter of the woman at whose house he was presently staying. Appellant also demanded again that she take him back to "the projects" to find some more crack cocaine.

Biven testified that the appellant then fell asleep in her car. She drove to a store on the west side of Cleveland. She pulled out two fuses from her dashboard, went into the store and cashed a check for $50. Biven started up the car but it would not operate properly. Appellant woke up and said they would have to take a bus to find the crack. Biven testified she told appellant to go alone and gave him the $50. When he left, Biven drove home and later called the Bay Village Police Department.

Early the next morning, Biven went to the police department and told Officer Kirchner of the events which occurred between herself and the appellant. Officer Kirchner testified she was there for approximately two hours and appeared quite shaken. He testified that after she told him she was "strangled" by appellant, he examined her neck and noticed a scratch along her windpipe. Officer Kirchner referred her to the Detective Bureau.

As previously stated, during this time appellant was staying with a woman he had met named Carol Arvajeh, and her eleven-year-old daughter, Rose. On the night of July 24, 1993, appellant was asked to move out by Carol Arvajeh. A struggle ensued and Arvajeh ran into the bathroom. Appellant kicked the bathroom door in and "cracked" her on the back of her head. He grabbed Arvajeh by the arm and took her into her daughter's bedroom. There appellant struck the daughter, Rose Arvajeh, in the head when she refused to leave her room.

After Rose left, appellant took Arvajeh to her bedroom, hit her again in the head, pulled out a knife and pressed it against her throat. When Rose came back into the room, appellant placed the knife inside his pants but it fell to the floor. Rose grabbed the knife and left the room. Appellant closed the door and grabbed a pair of scissors. Arvajeh pleaded with appellant to stop. Appellant dropped the scissors and pulled the telephone extension cord from the wall, telling her he was going to rape her. Appellant eventually dropped the telephone cord and began sobbing.

Appellant finally fell asleep for the night. Arvajeh was so afraid of waking appellant up that she stayed up on the couch thinking about what had just happened. After he woke up, appellant stayed in Arvajeh's house for two more days. At all times appellant followed her closely around the house and would not

let her use the telephone. Arvajeh testified, "[he] kept me hostage in my own house." On the following Tuesday, appellant had Arvajeh drop him off at work.

While at work, appellant was arrested by Lieutenant Tompkins, who had previously taken a formal statement from Donna Biven. On August 5, appellant was indicted for kidnapping, felonious assault, and aggravated robbery as to Biven, and felonious assault as to Arvajeh. While appellant was incarcerated, both Biven and Arvajeh had a number of conversations with appellant and had sent numerous "love letters" to appellant. Both women explained that they acted in this manner in an effort to appease appellant as they recalled his threats: "I'll get out of jail and kill you" and "I like killing people."

Later, Carol Arvajeh wrote a notarized letter to appellant's attorney on August 19, which was introduced as evidence. In the letter, Arvajeh recanted her statements she previously made to the police. Arvajeh stated that both she and the appellant were drinking at the time of the incident and that appellant was being harassed tremendously that day by Donna Biven. Additionally, she stated she did not wish to file charges and neither had been hurt by appellant nor feared being harmed in the future by appellant. Again, Arvajeh testified at trial that she wrote the letter only in an effort to pacify appellant because he was harassing her on the telephone and with letters.

A jury trial commenced and on October 8, 1993 appellant was found guilty. Appellant argued the elements of the charged offenses were not established beyond a reasonable doubt. Appellant also implied that he was merely involved in decaying relationships with two vengeful women. Appellant was found guilty of the lesser charges of abduction, assault and robbery as to Biven, and felonious assault as indicted against Arvajeh. Appellant timely files this appeal.

## II

Appellant's first assignment of error states:

"Both the Confrontation Clause of the Sixth Amendment and appellant's right to present a defense were violated when the trial court permitted Rose Arvajeh to testify when she was not disclosed as a witness in accordance with the discovery request of criminal rule 16."

Appellant, Vincent E. Czajka, argues he was prejudiced by the prosecution's violation of Crim.R. 16 when the state orally informed appellant that Rose Arvajeh would be testifying as a witness for the state during the trial. Specifically, appellant contends the trial court abused its discretion by offering appellant a mere five minutes to prepare for cross-examination instead of excluding her testimony or at the very least granting a continuance until the following day pursuant to Crim.R. 16(E).

The purpose of discovery rules is to protect against the surprise testimony of an undisclosed witness to the prejudice of the accused. See *State v. Heinish* (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026; *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138. In the event the rules of discovery are violated, Crim.R. 16(E)(3) grants the trial court discretion to impose whatever sanction on the noncomplying party it deems just under the circumstances. *State v. Adkins* (1992), 80 Ohio App.3d 211, 608 N.E.2d 1152; *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97. An abuse of that discretion implies more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The Ohio Supreme Court has held a trial court does not abuse its discretion by permitting the testimony of an undisclosed witness if it can be shown that the failure to provide discovery was not willful, that foreknowledge of the statement would not have benefited the defendant in the preparation of the defense, and that the defendant was not prejudiced by the admission of the evidence. See *State v. Heinish, supra; State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689.

In the case *sub judice*, the state orally gave notice to defense counsel prior to trial of witnesses who might be called to the stand and were not on the witness list. This was done in an effort to avoid any "surprise" on the part of defense counsel on the witnesses called by the prosecution. Thus, while there was a violation of Crim.R. 16, we find the violation was not done with the intention of surprising defense counsel.

Furthermore, the relatively brief testimony of Rose Arvajeh was merely corroborative of that of one of the state's main witnesses, namely her mother Carol Arvajeh (who was named on the witness list). Due to the nature of Rose's testimony, we find appellant's counsel was not only prepared to but in fact did conduct an effective cross-examination of the witness. See *State v. Jones* (Apr. 22, 1982), Cuyahoga App. No. 43972, unreported, 1982 WL 5313. Moreover, it is important to note that counsel, after conceding that the state may have advised him of the witnesses, was offered time to prepare once by the state and twice by the court. Counsel rejected the offer and went forward. See *State v. Parson, supra.*

Not only is appellant's argument based upon the Sixth Amendment and appellant's right to present a defense unpersuasive, we find that the trial court did not abuse its discretion by allowing the testimony of Rose Arvajeh. Appellant's first assignment of error is not well taken.

III

Appellant's second assignment of error states:

"The trial court erred in overruling appellant's Criminal Rule 29 motion for acquittal made at the close of the state's case-in-chief and at the close of all evidence."

Appellant argues the trial court abused its discretion when it denied his motion for acquittal since the evidence presented by the state was not sufficient as a matter of law to convict him of the charged offenses. Appellant also contends that in the event this court finds the trial court was justified in denying appellant's Crim.R. 29 motion, the jury verdict is against the manifest weight of the evidence.

Crim.R. 29(A), which establishes the parameters for the granting of a motion for acquittal, provides in pertinent part:

" * * * The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

The Ohio Supreme Court has held a trial court may not grant a motion for acquittal where the evidence adduced at trial shows that reasonable minds can reach different conclusions as to whether the elements of the charged offense or offenses have been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. Additionally, the trial court must view the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

Thus, the test an appellate court must apply is similar to reviewing a challenge based on the sufficiency of the evidence to support the conviction. See *State v. Bell* (May 26, 1994), Cuyahoga App. No. 65356, unreported, 1994 WL 236228. When reviewing the sufficiency of the evidence, an appellate court is to determine if the evidence admitted at trial, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. See *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. With these principles in mind, we turn our attention to the four counts of the indictment.

Count one of the indictment charged appellant with kidnapping Donna Biven. R.C. 2905.01, which defines kidnapping, provides in relevant part:

"(A) No person, by force, threat, or deception, * * *, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

"(1) To hold for ransom, or as a shield or hostage;

"(2) To facilitate the commission of any felony or flight thereafter[.]"

Count two of the indictment charged appellant with felonious assault against Biven. R.C. 2903.11 states in part:

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another[.]"

R.C. 2901.01(E) defines "serious physical harm":

"(E) 'Serious physical harm to persons' means any of the following:

" * * *

"(2) Any physical harm which carries a substantial risk of death.

"(3) Any physical harm which involves * * * some temporary, substantial incapacity."

Count three of the indictment charged appellant with the aggravated robbery of Biven. R.C. 2911.01 states in part:

"(A) No person, in attempting or committing a theft offense, * * *, or in fleeing immediately after such attempt or offense, shall do either of the following:

" * * *

"(2) Inflict or attempt to inflict serious physical harm on another."

In the instant case, Biven testified that appellant demanded she give him money and take him to find crack cocaine. When she refused, appellant not only choked her to the point of unconsciousness, but threatened to harm her father and brother if she refused to get him crack cocaine. Biven testified she was so frightened of appellant's threats that she followed his orders and gave him money out of her bank account and took him to a location where she hoped he would find the drug.

Contrary to appellant's assertions, we find being choked to the point of unconsciousness constitutes serious physical harm as defined in R.C. 2901.01(E)(3), as it caused Biven to be in a state of temporary, substantial incapacity. We therefore conclude that the testimony, if believed, could lead reasonable minds to find appellant guilty of kidnapping under R.C. 2905.01, felonious assault under R.C. 2903.11, and aggravated robbery under R.C. 2911.01.

As to count four of the indictment, appellant was charged with the felonious assault of Carol Arvajeh. R.C. 2903.11 defines "felonious assault" as it relates to the fourth count:

"(A) No person shall knowingly:

" * * *

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance * * *."

Carol Arvajeh testified that appellant "cracked" her on the head and put a knife to her throat. The mere brandishing of a knife has been held to constitute felonious assault. *State v. Zackery* (1987), 31 Ohio App.3d 264, 31 OBR 549, 511 N.E.2d 135, citing *State v. Tate* (1978), 54 Ohio St.2d 444, 8 O.O.3d 441, 377 N.E.2d 778. Here, the appellant not only brandished the knife but pressed it against appellant's throat. Again, we find the testimony of Carol Arvajeh, if believed, could lead reasonable minds to find appellant guilty of felonious assault under R.C. 2903.11(A)(2). See, also, *State v. Goble* (1982), 5 Ohio App.3d 197, 5 OBR 458, 450 N.E.2d 722.

Since there was sufficient evidence adduced at trial to prove every element of the charged offenses, the trial court did not err in denying appellant's motion for acquittal. Furthermore, keeping in mind that the credibility of the witnesses is primarily a function of the trier of fact, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, we find there was sufficient, credible evidence produced at trial which would convince the average mind of appellant's guilt beyond a reasonable doubt. Therefore, the jury verdict is not against the manifest weight of the evidence. See *State v. Martin, supra,*), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717; *State v. Eley, supra,* 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. Appellant's second assignment of error is not well taken.

## IV

Appellant's third assignment of error states:

"Mr. Czajka was denied effective assistance of counsel as guaranteed by The Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Constitution of the state of Ohio through counsel's failure to object to prejudicial hearsay evidence."

Appellant maintains that numerous prejudicial and/or inflammatory hearsay statements were introduced into evidence without objection by his counsel. Accordingly, appellant argues, since his counsel's conduct was deficient and substantially prejudicial, appellant was denied his right to effective assistance of counsel.

Appellant refers to approximately twenty hearsay statements to which his counsel failed to object. Based on the examples given, it appears appellant's counsel has misconstrued the legal definition of hearsay. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Furthermore, a statement is not hearsay if it is offered against a party and is his own statement. Evid.R. 801(D)(2).

In the instant case, the statements complained of are primarily those of the victim stating what the appellant had said to them, e.g., "I'm going to rape you." Under Evid.R. 801(D)(2), these types of statements do not constitute hearsay. Therefore, counsel's failure to object was neither deficient nor prejudicial since it echoed appellant's own statements, nor was appellant denied the effective assistance of counsel. See, Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Indeed, counsel was able to persuade the jury to reduce three counts (out of four), as indicted, to lesser included offenses. Appellant's third assignment of error is not well taken.

## V

Appellant's fourth assignment of error states:

"The trial court erred to defendant-appellant's prejudice by overruling appellant's motion for severance of counts one (1), two (2), and three (3) of the indictment from count four (4) of the indictment, for the purpose of appellant's trial."

Appellant argues the trial court abused its discretion when it denied appellant's motion to sever count four from the indictment pursuant to Crim.R. 14. Specifically, appellant complains that evidence presented to the jury established that the separate offenses against the two victims were not closely related or a part of a course of criminal activity, and appellant was prejudiced by the joinder of offenses since it allowed the jury to culminate evidence from both offenses into a general finding of guilt.

The joiner of offenses is permitted through Crim.R. 8, which reads in pertinent part:

"Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

It is understood that "[j]oinder is to be liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials and diminish inconvenience to the witnesses." *State v. Schaim* (1993), 65 Ohio St.3d 51, 58, 600 N.E.2d 661, 667.

Once two or more offenses have been joined, the defendant may move to sever pursuant to Crim.R. 14, which provides in part:

"If it appears that a defendant of the state is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts, * * * or provide such relief as justice requires."

To prevail on a claim that the trial court erroneously denied a motion for severance, a defendant has the burden of affirmatively demonstrating (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. *Schaim, supra*, at 59, 600 N.E.2d at 668, citing *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus. As previously stated, a trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167.

In the case *sub judice*, the two offenses appellant was charged with included kidnapping, felonious assault and aggravated robbery as to Biven and felonious assault as to Arvajeh. The evidence relied upon by the jury was primarily that of the victims' testimony. After a review of the transcripts, we find the testimony to be simple, direct and uncomplicated. Thus, the jury was able to segregate the proof required on each offense charged. See *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247; *State v. Roy* (Apr. 30, 1992), Cuyahoga App. No. 60403, unreported, 1992 WL 90152. Evidence supporting this finding is the jury's determination that appellant was guilty of the lesser included offenses of abduction, robbery and assault on Biven (who became unconscious) while

finding appellant guilty of felonious assault as to Arvajeh where a knife was brandished.

We further find the evidence produced at trial to be interlocking. The two offenses happened approximately two days apart. Appellant was living with Arvajeh when the crimes occurred against Biven. Also, the two events contained similar patterns of assault and hostage-taking on the part of appellant. He played upon the victims' sympathy to forge the two relationships. These relationships quickly turned physically abusive, apparently due to appellant's use of crack cocaine. Finally, not only both victims, but also certain members of the Bay Village Police Department, would have to testify at both trials.

Unlike the jury in *State v. Van Sickle* (1993), 90 Ohio App.3d 301, 629 N.E.2d 39, it is improbable the jury in this case would have confused the evidence or considered the testimony of one victim as corroborative of the other offense charged, as can be seen from the verdict of a lesser included offense as to victim Biven. For the foregoing reasons, we find the trial court did not abuse its discretion in denying appellant's motion to sever. Appellant's fourth assignment of error is not well taken.

## VI

Appellant states as his fifth and supplementary assignment of error:

"Because any communication between the bailiff and jurors during deliberation is strictly prohibited by Ohio Revised Code Section 2945.33, the conduct of the bailiff, in providing new and erroneous instructions to the jurors outside the presence of the court, was clearly prejudicial."

Appellant argues the bailiff, acting on her own volition, gave new and conflicting instructions to the jury during their deliberations. Since prejudice is presumed by R.C. 2945.33, appellant argues the trial court erred when it failed to grant a mistrial and/or reversal of the convictions.

Communications between court officials and jurors in criminal trials may be grounds for a mistrial, new trial, or reversal under R.C. 2945.33, which states in part:

"When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. * * * Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court * * *."

It is well settled that communications between a bailiff and jury during the deliberation process are presumptively prejudicial to a defendant who is later

found guilty by the jury. See *State v. Lane* (1988), 48 Ohio App.3d 172, 549 N.E.2d 193; *State v. King* (1983), 10 Ohio App.3d 93, 10 OBR 116, 460 N.E.2d 1143; *State v. Adams* (1943), 141 Ohio St. 423, 25 O.O. 570, 48 N.E.2d 861.

In the instant matter, the state has sufficiently rebutted appellant's claim of prejudice with regards to the limited communications between the jury and bailiff after deliberations. From the transcripts, it appears that the communication of the bailiff was strictly of a procedural nature concerning any requirement to find appellant not guilty of a count in the indictment if the jury had in fact unanimously found appellant guilty of the lesser included offense.

Furthermore, the state introduced the affidavit of a juror pursuant to Evid.R. 606(B) attesting that the communication at issue concerned a procedural matter and that the bailiff "was absolutely scrupulous in refusing to convey any information that may have compromised the process."

Finally, any possible prejudicial effect was negated by the trial court's subsequent instructions addressing the jury's difficulty in properly filling out the verdict form.

It should be noted that the appellant was found guilty of only one indicted charge. On the remaining three counts, the jury returned verdicts of lesser included offenses. This is indicative of a jury process which was not tainted but sure and thoughtful in approach demonstrating absence of prejudice to appellant.

Based upon (1) the lack of prejudice shown, (2) the inability to point to any substantive violation of the deliberation process, (3) the fact that the jury had in fact unanimously reached a decision before any confusion began, (4) the curative instructions of the court, (5) the careful and reasoned verdicts of the jury, and (6) a juror's statement indicating scrupulous adherence to the rules by the bailiff, the supplementary assignment of error is overruled.

We affirm.

*Judgment affirmed.*

Patton, C.J., and Harper, J., concur.

August Pryatel, J., retired, of the Eighth Appellate District, sitting by assignment.