OPINION
Defendant-appellant, Charles R. Griffin, appeals his convictions in the Butler County Court of Common Pleas for grand theft of a motor vehicle, burglary with a firearms specification, and grand theft with a firearms specification. We affirm.
On October 3, 1997, appellant entered into a contract for the financed purchase of an automobile from Symmes Auto Sales in Fair field, Butler County, Ohio. Appellant failed to make his first payment, and on October 23, 1997, the dealer repossessed the auto mobile. On October 28, 1997, appellant removed the automobile from the dealer's lot. On November 7, 1997, appellant was driving the automobile on I-71 when he was stopped by Officer John Crowell of the Montgomery Police Department ("MPD"). When Officer Crowell checked the automobile's VIN number, he discovered that the automobile was reported stolen.
Appellant was arrested, and the MPD contacted Officer Kevin Ridenour of the Fairfield Police Department ("FPD"), the investigator assigned to the case. Officer Ridenour traveled to the MPD station, where he interviewed appellant. Officer Ridenour orally read and allowed appellant to read a constitutional rights waiver form. Appellant signed this form acknowledging that he understood and waived his rights. After being Mirandized by Officer Ridenour, appellant gave a statement that he had taken the automobile. Appellant wrote out his statement and signed it. Officer Ridenour then transported appellant to the FPD station, where he was charged with grand theft of a motor vehicle.
Appellant was later released on bond. From Thanksgiving until early December 1997, appellant lived at the home of a friend in Fairfield, Ohio, which was owned by the friend's father, Mark Johnson. On December 15, 1997, Mark Johnson returned home from lunch to find that the house had been burglarized. Several items were taken, including wire-rim wheels, firearms, a television, a VCR, and Nintendo games. Officer Russell Strickland of the FPD responded to the burglary call and noticed that a broken basement window was the probable means of entry.
The following day, Anthony Morgan Henry ("Henry") went to Mark Johnson's work to tell Johnson that he and appellant had committed the burglary. Henry then went to the FPD station and told Officer Chris Murphy about the burglary. The police recovered several of the stolen items from an apartment at Cosway Court, in Fairfield, Ohio, at which appellant had stayed for a few days.
Officer Murphy went to Wildwood Apartments, where appellant was staying with his girlfriend. Officer Murphy awakened appellant, read him his Miranda rights, and questioned him regarding the burglary. Appellant admitted that he had broken into the Johnson home and provided details of the crime without prompting. Officer Murphy then took appellant to the police station, where he was read his constitutional rights and allowed to read and sign a waiver form. Appellant wrote out a statement admitting to the burglary. He was then charged with burglary and grand theft.
On February 3, 1998, appellant was indicted on one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), one count of burglary in violation of R.C. 2911.12(A)(2), and one count of grand theft in violation of R.C. 2913.02(A)(1). The burglary and grand theft counts both included firearms specifications. Appellant filed a motion to suppress his statements as being involuntarily given. The motion was denied by the trial court after a hearing on March 9, 1998.
The same day, the state became aware of the need of Sergei Smolyansky's testimony. Appellant had apparently sold Smolyansky the wire-rim wheels stolen from the Johnson home. The state also discovered that one of its disclosed witnesses, Tony Taylor, was in fact Henry, who was using an alias. The state immediately faxed the names of these witnesses to defense counsel and filed a supple mental discovery memorandum with the clerk of courts.
Appellant was tried before a jury on March 12 and 13, 1998. At trial, the state presented testimony from a number of witnesses, including Smolyansky and Henry. Smolyansky testified that appellant offered to sell him a set of wheels for his automobile on December 14, 1997. The following day, appellant offered to show the wheels to Smolyansky, who paid $450 for the wheels. Henry testified that he took part in the burglary, and that appellant had been the one who broke into the Johnson home through the basement window. Appellant objected to the court's decision to allow both of these witnesses to testify.
Appellant attempted to present Christine Abrams as an alibi witness. During the first day of trial, she had spoken to Henry, who had warned her not to perjure herself. Abrams left at the end of the first day and did not return on the second day of trial. Appellant was unable to secure her attendance, and the trial court repeatedly called her residence in Hamilton County.
At the close of the state's case-in-chief, appellant moved for a mistrial. First, appellant asserted that the state had failed to timely disclose that it would use Smolyansky and Henry as witnesses. The state responded that it notified appellant of the witnesses as soon as it was determined that their testimony was required. Second, appellant argued that Abrams' refusal to testify was due to the conversation with Henry, and that she should be compelled to testify.
The trial court overruled appellant's motion. The trial court found that the state had timely disclosed its witnesses, but nevertheless gave defense counsel opportunity to speak with these witnesses and prepare cross-examinations. The trial court also refused to compel Abrams' testimony, finding that appellant had not properly subpoenaed her as an out-of-county witness.
At the conclusion of the trial, the jury found appellant guilty of all charges. Appellant was sentenced to fifteen months of imprisonment on the grand theft of a motor vehicle charge, five years imprisonment on the burglary charge, and fifteen months imprisonment on the grand theft charge. Appellant was also sentenced to one year imprisonment on each gun specification. The grand theft sentences were to run concurrently to the burglary sentence, and the gun specification sentences were to run consecutively to the burglary sentence. Appellant appeals.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.
In his first assignment of error, appellant contends that his statements to the police were not voluntarily given because he was not properly informed of his Miranda rights. Appellant argues that the Miranda warnings on the waiver forms which he signed were written inconspicuously to ensure that appellant would not be aware of his rights.
In a motion to suppress, the trial court assumes the role of trier of fact and is in the best role to evaluate the credibility of witnesses and resolve questions of fact. State v. Clay (1973),34 Ohio St.2d 250, 251. In reviewing the decision of a trial court on a motion to suppress, the appellate court must accept the findings of fact if supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 593, appeal dismissed, 69 Ohio St.3d 1488. Accepting such facts as true, the appellate court must then independently determine, as a matter of law, and without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. Id.
In determining whether statements elicited during custodial interrogation are voluntary and admissible against the accused, the court must inquire into the totality of the circumstances surrounding the interrogation. The court must then determine whether the accused did, in fact, knowingly and voluntarily forgo his rights to remain silent and to have the assistance of counsel.Miranda v. Arizona (1966), 384 U.S. 436, 475, 86 S.Ct. 1602, 1628. Once warned, the accused is free to decide whether to make a statement to the authorities. Oregon v. Elstad (1985),470 U.S. 298, 308, 105 S.Ct. 1285, 1293.
Where, prior to questioning the accused, the police have fully informed the accused of his rights and the state's intention to use his statements against him, the warnings required byMiranda are satisfied. State v. Dailey (1990), 53 Ohio St.3d 88, paragraph one of the syllabus. An express written or oral statement of waiver of the Miranda rights may be strong proof of the validity of the waiver. North Carolina v. Butler (1979),441 U.S. 369, 373, 99 S.Ct. 1755, 1757. A valid waiver may also be proved where a writ ten form or statement is read to the accused and then signed by him. State v. Hall (1976), 48 Ohio St.2d 325,333, judgment vacated on other grounds (1978), 438 U.S. 910,98 S.Ct. 3134.
In the instant case, appellant was not only verbally informed of his rights, he was also given written forms to read and sign. The forms contained an indented paragraph which set forth all of the warnings required by Miranda. Appellant asserts that the paragraph was written in a smaller, less conspicuous print than the rest of the form. On the contrary, the contested paragraph is more than conspicuous, being an indented, bold-typed paragraph in the middle of the form. At the suppression hearing, appellant testified that he read and signed the forms, had an education sufficient to understand the forms and his rights, and that he did understand his rights.
Furthermore, appellant was given multiple warnings and opportunities to assert his rights. In respect to appellant's first statement, Officer Crowell testified that he advised appellant of the Miranda rights before taking appellant to the MPD station. At the MPD station, appellant was again advised of his rights and he then signed the waiver form in front of Officers Crowell and Ridenour. Appellant again waived his Miranda rights on the written statement form which he signed. In regard to appellant's second statement, testimony established that appellant was advised of his rights by Officer Murphy before being asked any questions. At the FPD station, appellant was again read his Miranda rights and signed a form waiving these rights. He also signed his statement, which had the Miranda warning typed on its front.
Appellant was advised of his Miranda rights six times and signed four forms displaying the Miranda warnings. The trial court correctly found that appellant's statements were voluntarily given. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN NOT GRANTING DEFENSE COUNSEL'S MOTION FOR A MISTRIAL.
In his second assignment of error, appellant contends that the trial court should have declared a mistrial because the prosecution untimely disclosed witnesses and because appellant was deprived of his right to compulsory process. Appellant argues that the state failed to properly notify him of two witnesses important to the state's case, Smolyansky and Henry. Appellant further argues that the trial court should have compelled the testimony of appellant's alibi witness, Abrams, who left the trial after the first day of testimony.
The granting or denying of a mistrial is within the sound discretion of the trial court, and will not be disturbed absent a showing that the accused has suffered material prejudice. Statev. Blankenship (1995), 102 Ohio St.3d 534, 549, appeal not allowed, 73 Ohio St.3d 1426, affirmed (1996), 74 Ohio St.3d 522. A mistrial should be granted only when a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315, certiorari denied (1995), 516 U.S. 950, 116 S.Ct. 394. A mistrial should not be granted merely because some minor error or irregularity has arisen. Blankenship, 102 Ohio App.3d at 549.
Appellant first asserts that the state failed to adhere to Crim.R. 16 because the state failed to notify appellant that Smolyansky and Henry would be called as witnesses. Appellant further asserts that the state's use of facsimile to notify appellant was not reliable and did not conform to the mandates of Crim.R. 16.
Pursuant to Crim.R. 16, the state is required to provide to the defendant, upon request or order, the names and addresses of all witnesses which the state intends to call at trial. Crim.R. 16(B)(1)(e); State v. Howard (1978), 56 Ohio St.2d 328, 333. The duty to disclose information is a continuing one, so that a party must notify the other party as new discoverable information is gained. Crim.R. 16(D).[1] If the state fails to promptly provide the identity of a witness as required by Crim.R. 16, the trial court does not abuse its discretion by permitting the witness to testify if it can be shown that: (1) the state's failure to provide discovery was not willful, (2) foreknowledge of the statement would not have benefitted the defendant in preparation of his defense, and (3) the defendant was not prejudiced by the admission of the evidence. State v. Czajka
(1995), 101 Ohio App.3d 564, 572. Such testimony should be excluded if the prosecutor knew of the witness and failed to disclose the witness' identity in a timely manner. State v.Linton (Dec. 6, 1994), Franklin App. No. 94APA03-300, unreported.
Where the failure to disclose a witness is not willful, the trial court has numerous means to cure such a deficiency in discovery. The trial court's remedy will be overruled by the appellate court only if found to be an abuse of discretion. See State v.Wamsley (1991), 71 Ohio App.3d 607, 610, citing Howard, 56 Ohio St.2d 328. One remedy available to the trial court is giving defense counsel the opportunity to interview the witness prior to the witness testifying. State v. Heinish (1990), 50 Ohio St.3d 231,236.
In the instant case, the trial court found that the state did not purposefully conceal the two witnesses from defense counsel. The state disclosed Smolyansky as a possible witness after the suppression hearing, when it was first determined that Smolyansky's testimony was necessary. Thus, the state gave as prompt notice as possible. The state had earlier informed appellant that it would call "Tony Taylor" as a witness. Three days before trial, the prosecutor discovered that "Tony Taylor" was an alias used by Henry. At that time, the prosecutor notified defense counsel of Henry's true name. Under these circumstances, we find that the state's supplemental discovery was timely. Crim.R. 16(D).
Appellant also argues that the state used an unreliable method to notify defense counsel of the identity of these two witnesses. Appellant asserts that the state's use of facsimile was improper in this case. Although the Rules of Criminal Procedure do not specify that a specific means of service must be used, we cannot say that, under the facts presented, the prosecutor was incorrect in using facsimile in providing notice to appellant of these two witnesses. Had the prosecutor mailed notice to appellant, as appellant claims should have been done, there is no guarantee that such notice would have been received prior to trial. Furthermore, the state timely filed the subpoenas with the clerk of courts on March 9, 1998.
At trial, the trial court called the witnesses before the bench and explained that it would give defense counsel the opportunity to interview the witnesses before allowing them to testify. The trial court ordered a recess for defense counsel to speak with the witnesses and prepare cross-examinations. Although Henry refused to speak with defense counsel, defense counsel was given as much time as was necessary to interview Smolyansky and prepare cross-examinations.
It is clear from the record that appellant knew of these two witnesses, as well as the substance of their testimony. The state timely supplied the witness names before trial, in compliance with Crim.R. 16(D). In addition, the trial court took the appropriate steps to cure any prejudice appellant may have suffered, allowing defense counsel to interview the witnesses and the time necessary to prepare cross-examinations. Therefore, we find that under the circumstances, the trial court did not abuse its discretion in allowing Smolyansky and Henry to testify. Wamsley,71 Ohio App.3d at 610.
Appellant also contends that he was denied his right to compulsory process when the trial court refused to compel the testimony of his alibi witness, a resident of Hamilton County. The trial court found that appellant had not properly subpoenaed Abrams, because appellant had not advanced her witness fees as required by Crim.R. 17(D). As to out-of-county witnesses, Crim.R. 17(D) provides in pertinent part:
 Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person or by reading it to him in person or by leaving it at his usual place of residence, and by tendering to him upon demand the fees for one day's attendance and the mileage allowed by law. The person serving the subpoena shall file a return thereof with the clerk. If the witness being subpoenaed resides outside the county in which the court is located, the fees for one day's attendance and mileage shall be tendered without demand.
Because appellant failed to provide witness fees to Abrams, an out-of-county witness, we agree that appellant's subpoena was invalid. Crim.R. 17(D); State v. Keilar (Apr. 19, 1996), Miami App. No. 95-CA-34, unreported.
Although appellant contends that he is an indigent defendant entitled to service without paying the fees, see Crim.R. 17(B), that decision is discretionary with the trial court. Id. Appellant did not notify the trial court that he would be unable to pay the required fees. Instead, defense counsel argued only that he was not required to pay the fees until after the witness testified. Furthermore, our review of the record has not revealed any papers filed with the trial court before May 14, 1998, two months after the trial, which demonstrated that appellant was indigent. Thus, at the time of trial, there is no evidence that the trial court knew or was made aware that appellant was indigent, and appellant failed to request any funds to advance to the witness.
The trial court also went to extensive lengths in attempting to aid appellant in securing Abrams' presence. The trial court repeatedly called Abrams' residence and offered defense counsel the opportunity to bring Abrams before the bench so that the court could personally order that she must stay to testify. If, in fact, Abrams' testimony was so important to appellant's defense, it was incumbent upon appellant to ensure her presence. Under the circumstances presented, we find that the trial court did not abuse its discretion in finding that appellant did not properly subpoena Abrams. Therefore, we find that the trial court was correct in overruling appellant's motion for a mistrial. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] Crim.R. 16(D) provides:
 Continuing duty to disclose. If, subsequent to compliance with a request or order pursuant to this rule, and prior to or during trial, a party discovers additional matter which would have been subject to discovery or inspection under the original request or order, he shall promptly make such matter available for discovery or inspection, or notify the other party or his attorney or the court of the existence of the additional matter, in order to allow the court to modify its previous order, or to allow the other party to make an appropriate request for additional discovery or inspection. (Emphasis added.)