[Cite as *State v. Dye*, 2019-Ohio-885.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., |
| -vs- | : | |
| | : | |
| CHESTER D. DYE | : | Case No. 18-CA-54 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Common Pleas
Court Case No. 17-CR-00954

JUDGMENT:    Affirmed in Part, Reversed in part
and Remanded

DATE OF JUDGMENT:    March 13, 2019

APPEARANCES:

For Plaintiff-Appellee

CLIFFORD J. MURPHY
20 South Second Street
4th Floor
Newark, OH  43055

For Defendant-Appellant

JAMES A. ANZELMO
446 Howland Drive
Gahanna, OH  43230

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Chester D. Dye appeals the June 15, 2018 judgment of conviction and sentence of the Court of Common Pleas of Licking County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 1}   Gary Shannon has lived on a 32 acre farm property on Evans Road in Northport, Licking County Ohio for more than 12 years. In early October, 2017, Shannon experienced some health issues which required a 3-day hospital stay. When he returned home, he noticed someone had entered his property and removed a 15 foot trailer, a log splitter, and other miscellaneous items. Shannon had built the log splitter himself and welded his initials into the push plate of the splitter. It was very heavy, and would require more than one person and a truck/trailer to move. The trailer was also homemade by Shannon. Because it was used for farm chores only, Shannon never licensed the trailer.

{¶ 2}   Shannon did not immediately contact law enforcement because he was frustrated. This was not the first time someone had stolen from him. Shannon did not turn the matter into his homeowner's insurance either. Instead, he set up a surveillance camera on his property.

{¶ 3}   Shannon required hospitalization a second time towards the end of October 2017. When he returned home from that stay, he found several bags of feed missing. Additionally, there were piles of horse tack set near the door of an outbuilding as if staged for a later pickup. Shannon checked his surveillance camera which had captured images of two women, both unknown to Shannon, loading sacks of grain into a Dodge Charger.

{¶ 4} Shannon reported the matter to the Licking County Sheriff's Office. Deputy Teresa Holmes handled the matter. She reviewed the images from Shannon's camera and recognized both women, one of which she knew as appellant's girlfriend who lives with appellant at 17102 McKee Hill Road.

{¶ 5} Shannon's wife posted the photos captured by the camera on Facebook and asked if anyone in the neighborhood was familiar with the vehicle. People who responded advised they had seen the vehicle on McKee Hill Road.

{¶ 6} On October 23, 2017, upon seeing the Facebook post, Shannon's neighbor James Larue went to visit Shannon. Larue took care of Shannon's animals when Shannon was unable, and was familiar with Shannon's farm equipment, in particular the log splitter. The two men decided to take a drive down McKee Hill Road. As they drove past appellant's home at 17102 McKee Hill Road, they spotted Shannon's log splitter sitting in front of the house, with Shannon's initials on the push plate visible from the road. Larue drove to the end of the road where he pulled over and contacted the sheriff. As they sat there, 2 women came out of the house, got in a white pickup truck and drove up to the men. They asked what the men were doing and why they had gone by the house so slowly. The men replied they were just driving around. The women returned to appellant's home where "a lot of activity" followed – people "scurrying around and leaving." A man came out of the house and covered the log splitter with a tarp. He then got into a blue car and left the scene.

{¶ 7} Deputy Holmes is familiar with appellant and has been to his property several times. She responded to Shannon and Larue's call. That same evening, Shannon's log splitter, 15-foot trailer, and miscellaneous items were recovered from

appellant's property. The trailer was found parked in front of one of three sheds belonging to appellant, and still did not have a license plate. The value of the log splitter and trailer was approximately $2,300.

{¶ 8} Deputy Holmes obtained a search warrant for the three sheds on appellant's property. The sacks of grain taken from Shannon's barn were found in one of the sheds. Holmes spoke with appellant briefly on the day the warranted was executed. Appellant did not deny the items found were on his property, and further did not deny that some were stolen. Rather, appellant claimed it was all part of an insurance scam. He further claimed he had purchased the trailer, but could not say from whom. Then, the day of trial, he produced a bill of sale stating he had purchased the trailer from his girlfriend. But the bill of sale was for a shorter trailer which was registered to his girlfriend and had been issued a license plate.

{¶ 9} As a result of these events, on November 22, 2017, appellant was charged with one count of receiving stolen property, a felony of the fourth degree.

{¶ 10} Appellant was released on bond and the trial court ordered him to submit to supervision by pre-trial release. Appellant signed the terms and conditions of pre-trial release which included the requirement that he be subject to random urine drug screens (UDS). Wes Luce of the Licking County Felony Probation Services supervised appellant. On February 1, 2018, appellant arrived at Luce's office for a scheduled appointment and UDS. While Luce monitored appellant's UDS, instead of urinating into the test cup, appellant removed a bottle containing someone else's urine from his pocket and poured the urine into the test cup. Once caught, appellant admitted to using drugs two days prior.

{¶ 11} In light of this development as well as developments regarding appellant's pending charge for receiving stolen property, on March 29, 2018, the Licking County Grand Jury returned a superseding indictment charging appellant with one count of receiving stolen property, a felony of the fifth degree, and one count of tampering with evidence, a felony of the third degree.

{¶ 12} Appellant pled not guilty to these charges and elected to proceed to a jury trial which took place on June 14, 2018. Before voir dire, the court indicated there had been an off the record discussion regarding severance of the charges and that the court would be inclined to deny a severance.

{¶ 13} The state presented evidence from five witnesses pertaining only to Shannon's stolen log splitter and trailer as well as the tampering with evidence charge. Appellant testified on his own behalf. He testified that the trailer and log splitter were not found on his property, but rather an adjacent property. He then testified, however, that he has items on that adjacent property. Additionally, appellant stated Deputy Holmes misunderstood him and that he had told her "this stinks of an insurance scam" not that it was part of an insurance scam.

{¶ 14} After retiring to deliberate, the jury asked to see the bill of sale for the trailer. That item, however, had been excluded from evidence as it had not been properly authenticated. A short time later, the jury found appellant guilty as charged. It further found the value of the property in question for the receiving stolen property charge was greater than $1000 but less than $7500. Appellant was subsequently sentenced to one year for receiving stolen property, and three years for tampering with evidence. The trial court ordered appellant to serve the sentences consecutively.

{¶ 15} Appellant filed an appeal, and the matter is now before this court for consideration. He raises six assignments of error as follow:

I

{¶ 16} "THE TRIAL COURT ERRED BY NOT HOLDING SEPARATE TRIALS ON DYE'S CHARGES OF TAMPERING WITH EVIDENCE AND RECEIVING STOLEN POPERTY, IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTUTION"


II

{¶ 17} "THE TRIAL COURT PLAINLY ERRED BY FAILING TO INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY AGREE ON THE SAME SPECIFIC INCIDENT OF RECEIVING STOLEN PROPERTY ALLEGED IN THE SINGLE COUNT IN THE INDICTMENT AGAINST CHETER DYE, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS OF LAW, A FAIR TRIAL, JURY UNANIMITY, AND THE DOUBLE JEOPARDY PROTECTIONS PURSUANT TO THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

III

{¶ 18} "DYE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

IV

{¶ 19} DYE'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

V

{¶ 20} DYE'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

VI

{¶ 21} THE TRIAL COURT UNLAWFULLY ORDERED DYE TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDEMENTS TO THE UNITED STATES CONSTITUTION."

{¶ 22} For ease of discussion, we address some of appellant's assignments of error out of order as well as together.

I

{¶ 23} In his first assignment of error, appellant argues the trial court erred when it denied his motion to sever and hold separate trials. We disagree.

{¶ 24} Crim.R. 8(A) governs joinder of offenses and states offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or

are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. See, *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury can easily segregate the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (8th Dist. Cuyahoga 1995).

{¶ 25} A defendant may move to sever the charges pursuant to Crim.R. 14. In such a motion, the defendant bears the burden to show his rights would be prejudiced by joinder. *State v. Strobel*, 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist. Henry 1988).

{¶ 26} We note appellant made no written motion to sever the offenses set forth in the March 29, 2018 superseding indictment. Further, there is no record of any oral motion by appellant, nor of any discussion of the matter at the June 14, 2018 trial or any time before. The sole reference to severance appears on page 84 of the trial transcript and is as follows:

> The Court: Okay. We also had also talked before the trial about Mr. Barth had asked about the possibility of separating the charges for trial and I had represented that one of the considerations the Court looks at under that circumstance was whether or not the charges would cause confusion with the jurors, and in this case they're very separate and distinct, easy to distinguish and aren't going to cause confusion, and the fact that, you know, the witnesses are here,

today's the day of trial and I would not look favorably on that today in

all likelihood.

Anything you wish to add to that Mr. Murphy?

Mr. Murphy: No Your Honor.

The Court: Mr. Barth?

Mr. Barth: No sir.

{¶ 27} Not only is there no motion in the record, there is no ruling made by the court. Rather, the court merely indicated a favorable ruling would be unlikely. Because there is not record of either a motion or a ruling, we must overrule appellant's first assignment of error.

IV, V

{¶ 28} We address appellant's fourth and fifth assignments of error together. In these assignments of error, appellant argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 29} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences,

consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 30} Appellant was indicted on one count of receiving stolen property, the value of which was $1000 or more, but less than $7500. To support a conviction for receiving stolen property, the state was required to produce evidence to show appellant received, retained, or disposed of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. R.C. 2913.51(A).

{¶ 31} During trial the state presented evidence pertaining to only two items; the log splitter and the 15-foot trailer. The evidence produced demonstrated appellant was in possession of Shannon's log splitter, which was appraised at between $1100 and $4000. Shannon made the log splitter himself and welded his initials into the push plate of the device. He and Larue drove by appellant's residence and spotted the splitter sitting in appellant's front yard. Appellant initially told Deputy Holmes the log splitter belonged to him, then at trial said he knew nothing about the splitter, other than it had been sitting where it was found for 3 weeks. T.121-122, 128-130, 184, 213, 276.

{¶ 32} Deputy Holmes testified that when Shannon's trailer was also found on appellant's property, it was parked in front of a shed belonging to appellant. T. 214-215.

Appellant initially told Deputy Holmes he had purchased the trailer, but he could not produce a name when asked from whom he had bought the trailer. T. 218-219. On the day of trial, however, appellant produced a bill of sale which alleged he had purchased the trailer from his girlfriend. The bill of sale, however, was for a shorter trailer. T. 220-222. In any event, because the document was not properly authenticated, it was not admitted in to evidence.

{¶ 33} When Holmes later returned to appellant's property to execute the search warrant, appellant changed his story and claimed the items in his possession were all part of an insurance scam. Holmes followed up with Shannon's insurance company and found no evidence of any claims filed by Shannon.

{¶ 34} The state presented sufficient evidence to support a finding that appellant committed the crime of receiving stolen property by unlawfully obtaining both items belonging to Shannon, valued at more than $1000, but less than $7500, knowing or having reasonable cause to believe they had been obtained through the commission of a theft offense. Further, as outlined above, given appellant's evolving and inconsistent explanations, the jury did not lose its way in believing the state's evidence over appellant's. We find, therefore, his conviction for receiving stolen property is not against the manifest weight of the evidence.

{¶ 35} Next, appellant argues his conviction for tampering with evidence is against the manifest weight and sufficiency of the evidence. Specifically, appellant argues that he because he did not actually follow through with his intention to substitute someone else's urine for his own, that he can only be guilty of attempted tampering with evidence. We disagree.

{¶ 36} First, counsel for appellant never requested a jury instruction for attempt, and never advanced this theory at trial. He therefore forfeits all but plain error here on appeal. Appellant here claims he never actually dumped the urine he brought with him in a bottle, into the test cup. A review of the record reveals otherwise. At page 195 of the transcript, Luce described what happened while he was monitoring appellant's UDS:

> When he was preparing to give us a sample, I noticed his hand was going into the pocket of his sweatshirt, he had like a hooded sweatshirt on, and he pulled out the bottle that we have, a device with the cap unscrewed [referring to state's exhibit 9 a container confiscated from appellant during the UDS]. He then proceeded to empty an amount of liquid into the [test] cup, and then at that point we stopped – I saw it, I stopped the test.

{¶ 37} We therefore find no error, plain or otherwise. There was sufficient evidence produced by the state to support a conviction for tampering with evidence and the jury did not lose its way in so convicting appellant.

{¶ 38} The fourth and fifth assignments of error are overruled.

II

{¶ 39} In his next assignment of error, appellant argues the trial court erred when it failed to instruct the jury that is must unanimously agree on each specific incident of receiving stolen property alleged in the single count of the indictment. We disagree.

{¶ 40} Crim.R. 30 governs instructions. Subsection (A) states the following in relevant part: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

{¶ 41} Counsel for appellant did not object to the jury instructions at trial and concedes that we review this assignment of error for plain error.

{¶ 42} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim.R. 52(B). As part of the inquiry into whether plain error occurred, a reviewing court "must examine the error asserted by the [defendant] in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred." *State v. Slagle*, 65 Ohio St.3d 597, 605, 605 N.E.2d 916, (1992). Appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long*. at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. at paragraph three of the syllabus.

{¶ 43} "When a court of appeals engages in a plain-error analysis, it must conduct a complete review of all relevant assignments of error in order to determine whether a manifest miscarriage of justice has occurred that clearly affected the outcome of the trial." *State v. Hill*, 92 Ohio St.3d 191, 2001-Ohio-141, 749 N.E.2d 274 at syllabus.

{¶ 44} As addressed in the fourth and fifth assignments of error above, appellant's conviction for receiving stolen property is supported by sufficient evidence as it pertains

to both the log splitter and the 15-foot trailer. Appellant cannot demonstrate, therefore, that the outcome of his trial, would have been any different had the jury been required to consider each item, save for appellant being convicted of two counts of receiving stolen property instead of one.

{¶ 45} The second assignment of error is overruled.

III

{¶ 46} In his third assignment of error, appellant argues his counsel rendered ineffective assistance by failing to request a jury instruction regarding appellant's own testimony as to his prior criminal history, and further, by failing to object to the imposition of court costs at the time of sentencing. We disagree.

{¶ 47} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 48} Even if failing to request a limiting instruction as to appellant's prior record could somehow be construed as deficient performance, appellant still cannot satisfy the second *Strickland* prong. As discussed at length above, sufficient, credible evidence was

produced to support appellant's convictions. Appellant therefore cannot demonstrate prejudice.

{¶ 49} Appellant's court costs argument is also without merit. A defendant may seek waiver of court costs with the trial court at any time, including after sentencing. R.C 2947.23(C). Appellant has therefore suffered no prejudice. *State v. Davis*, 5th Dist. Licking No. 17CA55, 2017-Ohio-9445 ¶ 27.

{¶ 50} The third assignment of error is overruled.

VI

{¶ 51} Appellant's final assignment of error argues the trial court failed to make the appropriate findings on the record before imposing consecutive sentences. The state concedes this fact. We therefore grant appellant's final assignment of error, vacate his sentence and remand the matter to the trial court for resentencing.

{¶ 52} The sixth assignment of error is granted.

{¶ 53} The judgment of conviction of the Licking County Court of Common Pleas is affirmed. Appellant's sentence is vacated, and the matter is remanded for resentencing.


By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.



EEW/rw