OPINION
Defendant-appellant, Scott A. Jones, appeals his conviction in the Butler County Court of Common Pleas for felonious assault, failure to comply with the order of a police officer, and aggravated vehicular assault.
On the night of February 28, 1998, Officers Jeff Eck and Rick Heidorn of the Hamilton Police Department ("HPD") were patrolling the Second Ward area of Hamilton, Butler County, Ohio. The officers were in the vicinity of Mahogany's Bar at Front and Hurm Streets when Officer Heidorn recognized a red Mercury Cougar belonging to appellant parked in front of the bar. The vehicle was stopped in the street and still running, but left unattended. The officers also observed a white van parked on Wilson Street, alongside the bar, a location known for its drug-related activities.
The officers pulled into a nearby alley to observe the van for illegal activity. After a few minutes, the officers heard gunshots fired into the crowd near the bar. The officers pulled their car onto Front Street in time to see appellant jump into his car. Appellant looked directly at the officers as he pulled away. Officer Heidorn attempted to stop appellant at Second and Wilson Streets, but appellant refused to comply and pursuit began. As the officers followed appellant, appellant ran a stop sign when turning onto Pershing Avenue and two red lights as he drove onto Martin Luther King, Jr., Drive. Appellant was driving in excess of sixty m.p.h. An investigation of the scene at Mahogany's Bar by Lt. Joseph Murray of the HPD revealed that no one had been injured by the gunshots.
Appellant continued south into the city of Fairfield, at which time Officers Eck and Heidorn ended their pursuit, and the Fairfield Police Department ("FPD") took up the pursuit of appellant. Officer James Williamson of the FPD was stopped, with his lights activated, at the intersections of Nilles, Southgate, and River Roads, a large intersection in Fairfield. Officer Williamson observed appellant driving left of center around other vehicles and accelerating. Officer Williamson began pursuing appellant down River Road. Appellant was traveling in excess of ninety m.p.h. The posted speed limits in this area are between twenty-five and thirty-five m.p.h.
Appellant drove into a subdivision, cutting through a number of yards as he evaded the police after driving into a cul-de-sac. Appellant returned to River Road, and continued to U.S. 27. Appellant traveled north on U.S. 27, crossed the median, and continued northbound in the southbound lanes. When appellant reached State Route 128, he exited and headed back into Hamilton. Appellant was driving in excess of seventy m.p.h. hour.
Deputy Jay Young of the Butler County Sheriff's Office ("Sheriff's Office"), received a radio transmission that appellant was leading a pursuit near Ross Township. Dep. Young pulled into an intersection at Columbia Bridge on State Route 128. He attempted to clear traffic and began setting out the road "stop sticks." Stop sticks are devices designed to puncture a vehicle's tire and disable the vehicle. Dep. Young had placed "stop sticks" in the northbound lane, and was attempting to place more "stop sticks" in the turn lane, as appellant approached, driving through the lane. Dep. Young was forced to jump out of the way when appellant came within two feet of where Dep. Young stood.
Appellant re-entered Hamilton, with Dep. William Marcum of the Sheriff's Office in the lead pursuing vehicle. Appellant led the chase throughout the Second Ward, driving between fifty and sixty m.p.h., with pedestrians on the sidewalks and in the street. Appellant made a sharp left turn onto Pershing Avenue, but when Dep. Marcum attempted to follow, the deputy lost control of his vehicle, crashing into a telephone pole. Dep. Marcum briefly lost consciousness, and was unable to exit his vehicle when he awoke. He was transported to Fort Hamilton Hospital, where he was treated for head, neck, and left knee injuries. Although he was soon released, he lost a day of work, and still suffers neck pain and headaches.
HPD Officers Aaron McQueen and Dennis Orender, who were working a two-person car, also joined the pursuit at Columbia Bridge, with Officer McQueen driving the patrol cruiser. The officers began "paralleling" appellant through Hamilton's side streets.[1] The officers turned onto East Avenue, traveling northbound, as appellant turned southbound onto East Avenue. Appellant crossed the center lane, driving southbound in the northbound lane, directly towards the officers. Officer McQueen was forced to pull to the right curb to avoid a collision. The officers resumed paralleling appellant's course.
Officers McQueen and Orender then turned northbound onto Front Street. Appellant also turned onto Front Street, traveling southbound in the northbound lane. Once again, Officer McQueen was forced to pull completely to the right curb to avoid being hit.
Appellant then turned onto Chestnut Street, with Officer McQueen following. Appellant drove onto the sidewalk to evade "stop sticks" placed at the intersection of Central and Chestnut. Officer McQueen noticed a pedestrian was bicycling on the sidewalk and hit appellant's vehicle from behind in an attempt to push appellant's vehicle away from the pedestrian. Appellant's car spun away from the pedestrian, but appellant regained control and was able to evade the "stop sticks," although Officer Heidorn, who was in one of the last cars pursuing appellant, was unable to do the same, thus disabling his cruiser.
At this time, Lt. Murray was traveling northbound on Front Street, and appellant crossed over into the northbound lane, forcing Lt. Murray onto the curb. Appellant's vehicle came within a quarter of a car length of Lt. Murray's cruiser. Appellant then drove through Bailey Square, a small city park, causing damage to its landscaping. Lt. Murray began "paralleling" appellant. Lt. Murray turned onto Chestnut, as appellant did the same, but traveling in Lt. Murray's direction. Again, Lt. Murray was forced to drive onto the curb to avoid a collision. Appellant struck a pole at 71 Chestnut Street, disabling his vehicle. Appellant was arrested, but he resisted attempts to place him in the police cruiser.
In all, five different law enforcement departments were involved in the car chase. The pursuit lasted for over one half of an hour. Throughout the chase within Hamilton, pedestrians were on the sidewalks and often walked out into the street. During the chase, some of the police cruisers were pelted by rocks. When appellant was arrested, a crowd had gathered, and some members of this crowd attempted to prevent appellant's arrest.
On April 21, 1998, the Butler County Grand Jury issued an eleven count indictment against appellant. Counts one through seven charged that appellant had committed felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the first degree, by knowingly causing or attempting to cause physical harm to police officers by means of a deadly weapon, an automobile. Count one alleged a felonious assault against Officer Heidorn. Count two alleged the same against Officer Eck. Counts three and four alleged felonious assaults against Lt. Murray. Counts five and six alleged felonious assaults against Officer McQueen. Count seven alleged a felonious assault against Dep. Young.
The remaining four counts charged other offenses. Count eight charged that appellant had committed vandalism, a violation of R.C. 2909.05(B)(2), a felony of the fifth degree, by causing serious physical harm to government property, the landscaping in Bailey Square. Count nine charged that appellant had failed to comply with an order or signal of a police officer, a violation of R.C. 2921.331(B), a felony of the fourth degree, by operating his vehicle so as to elude or flee police officers after receiving signals to stop, and by this further operation of his vehicle creating a substantial risk of physical harm. Count ten charged another failure to comply with an order of a police officer, a violation of R.C. 2921.331(A), a misdemeanor of the first degree, by failing to comply when the officers first turned on their overhead lights. Count eleven charged appellant with committing aggravated vehicular assault, a violation of R.C. 2903.08(A), a felony of the fourth degree, by recklessly causing serious physical harm to Dep. Marcum.
Trial commenced on August 31, 1998. The state presented the testimony of HPD Officers Eck, Heidorn, Williamson and McQueen, Lt. Murray, and Deputies Marcum and Young. The state also called as witnesses Sergeant Dennis McCune of the Sheriff's Office and HPD Officer Doug Zeek, both of whom were also involved in the pursuit of appellant. Appellant made a Crim.R. 29 motion for acquittal, which was granted as to the allegation in counts one through seven that appellant had knowingly caused physical harm to the police officers. The trial court denied the motion as to counts eight through eleven and the allegation in counts one through seven that appellant had attempted to cause physical harm.
Appellant testified on his own behalf, and called Lt. Murray and Chief Dep. Richard Jones of the Sheriff's Office to testify about police procedures involving high speed pursuits. At the close of trial, the state made a motion to dismiss count ten, which was granted by the trial court. Appellant renewed his motion for acquittal, which the trial court denied. On September 3, 1998, the jury returned its verdict, finding appellant guilty of counts three, five, six, seven, nine, and eleven. Appellant was found not guilty of counts one, two, four, and eight.
Appellant was sentenced on October 15, 1998. The trial court ordered that appellant serve a ten-year prison term and pay a $5,000 fine for each of counts three, five, six, and seven. Appellant was ordered to serve an eighteen-month prison term and pay a $5,000 fine on each of counts nine and eleven. All sentences were to be served consecutively. Appellant was also ordered to pay $7,412.51 in restitution. Appellant appeals, raising four assignments of error.
Assignment of Error No 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY OVERRULING HIS MOTION TO DISMISS COUNTS THREE, FIVE, SIX, AND SEVEN OF THE INDICTMENT ON THE BASIS OF INSUFFICIENCY OF THE EVIDENCE.
 In his first assignment of error, appellant contends that the trial court erred by overruling his motion to acquit on counts three, five, six, and seven. Appellant argues that the state failed to prove that appellant intended to or attempted to harm the police officers.
Crim.R. 29 states, in pertinent part:
 (A) Motion for judgment of acquittal. The trial court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 A trial court will not enter a judgment of acquittal under Crim.R. 29(A) for the defendant if reasonable minds could differ as to whether the state has proven every material element of the crime. State v. Thompkins (1997), 78 Ohio St.3d 380, 386; State v. Evans (1992), 63 Ohio St.3d 231, 248, certiorari denied (1992), 506 U.S. 886, 113 S.Ct. 246. In ruling on a Crim.R. 29(A) motion, the trial court must view the evidence in a light most favorable to the state, the party against whom the motion is directed. State v. Fields (1995), 102 Ohio App.3d 284, 288-89. Review of a denial of a motion for acquittal is de novo, and the trial court will not be reversed unless reasonable minds could only reach the conclusion that the evidence was insufficient to sustain a conviction. State v. Miley (1996), 114 Ohio App.3d 738, 744, leave to appeal denied (1997), 77 Ohio St.3d 1584.
R.C. 2903.11 defines "felonious assault:"
(A) No person shall knowingly:
* * *
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
"Attempt" is defined by R.C. 2923.02(A):
 No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
In State v. Woods (1976), 48 Ohio St.2d 127, vacated in part on other grounds Woods v. Ohio (1978), 438 U.S. 910, 98 S.Ct. 3133, the Supreme Court of Ohio explained that a person is guilty of criminal attempt where one
 purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.
 Id. at paragraph one of the syllabus.
The Supreme Court of Ohio has addressed what conduct constitutes a "substantial step" demonstrating an intent to commit a felonious assault. In State v. Brooks (1989), 44 Ohio St.3d 185, the court held that
 [t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2).
 Id. at syllabus. Nonetheless, the act of pointing a deadly weapon at another "coupled with a threat, which indicates an intention to use such weapon," is sufficient evidence to support a conviction for felonious assault. State v. Green (1991), 58 Ohio St.3d 239, syllabus.
A person acts "knowingly" when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B);State v. Upham (May 12, 1997), Butler App. No. CA96-08-157, unreported. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B). Thus "knowingly" is cast in terms of the probability that one's conduct will cause a certain result. Upham, citing State v.Bernard (Dec. 5, 1991), Cuyahoga App. No. 59452, unreported. Unlike the higher degree of culpability of "purposely," "knowingly" does not require the specific intent to commit the crime. Upham.
R.C. 2923.11(A) defines "deadly weapon:"
 [A]ny instrument, devise, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon.
 In Upham, this court held that an automobile may be deemed a "deadly weapon" under certain circumstances. This decision accords with decisions from other courts. State v. McDaniel (May 1, 1998), Montgomery App. No. 16221, unreported, discretionary appeal not allowed (1998), 83 Ohio St.3d 1435; State v. Prince
(Nov. 19, 1992), Cuyahoga App. No. 61342, unreported; State v. Hutchins (Aug. 9, 1990), Lucas App. No. 90-182, unreported. In determining whether an automobile is a deadly weapon, a court should not only consider the intent and mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or serious bodily injury. Upham, citing Hutchins. The determination of whether an automobile is a deadly weapon is a question of fact for the jury. Id.
Applying the foregoing to the present case, the state presented sufficient evidence demonstrating that appellant knowingly attempted to cause physical harm to the police officers. Appellant instigated a high speed pursuit which encompassed two cities and a township, and lasted for over half an hour. Appellant sped through the streets of Hamilton at twice the posted speed limit. Appellant nearly ran over one deputy and drove head on at police cruisers on four occasions, with collisions being avoided only by action by the police. Such conduct demonstrated that appellant used his automobile as a deadly weapon and that appellant was aware his actions would probably harm the police officers.
In the four contested charges, appellant was alleged to have attempted harm to Lt. Murray (count three), Officer McQueen (counts five and six), and Dep. Young (count seven). Appellant drove head on at Lt. Murray and Officer McQueen and almost ran over Dep. Young. Appellant claims that he was in control of his car and did not intend any harm. This is an issue of credibility for the jury to resolve. The state presented substantial testimony that harm was averted only through the defensive action of these police officers, whether it was driving onto a curb or jumping out of the way of appellant's automobile.
Construing the evidence in favor of the state, the state presented sufficient evidence to support the charge that appellant knowingly attempted to cause physical harm with a deadly weapon. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT BY OVERRULING HIS MOTION TO DISMISS COUNTS THREE, FIVE, SIX AND SEVEN OF THE INDICTMENT AT THE CONCLUSION OF THE CASE ON THE BASIS THAT THEY WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.
 In his second assignment of error, appellant contends that his four convictions for felonious assault were against the manifest weight of the evidence. Appellant argues that he presented evidence that he was in control of his vehicle, and that he at no time intended to harm the police officers.
Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997), 78 Ohio St.3d 380,386-87, rehearing/reconsideration denied (1997), 79 Ohio St.3d 1451. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v.Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175. A jury verdict will not be disturbed on appeal if reasonable minds could arrive at the conclusion reached by the jury. State v. Fields (1995),102 Ohio App.3d 284, 287.
Upon a thorough review of the record, we cannot say that the jury lost its way in finding appellant guilty of felonious assault. Although appellant testified that he was afraid and that he did not intend to harm anyone, the state presented evidence to the contrary. Appellant led a high-speed chase for over half an hour. He came within two feet of running over Dep. Young at Columbia Bridge. The jury could easily have concluded that, had Dep. Young not jumped out of the way, appellant would have hit him.
The jury could also conclude that appellant had attempted to harm Lt. Murray and Officer McQueen. In both cases, appellant drove directly at their cruisers, and the only reason a collision was avoided was defensive action by the officers. Both officers drove onto the curb, and appellant still came close to hitting them, once missing Lt. Murray by less than one quarter of a car length. Even though appellant did not hit the officers' cars, the officers could have been injured while swerving out of appellant's way.
We find that appellant's convictions for felonious assault were not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED APPELLANT'S RULE 29 MOTION AS TO COUNT ELEVEN.
 In his third assignment of error, appellant contends that his conviction for aggravated vehicular assault was not supported by the evidence and against the manifest weight of the evidence. Appellant claims that the state failed to prove that appellant struck Dep. Marcum's vehicle or caused Dep. Marcum's vehicle to crash. Appellant also asserts that Dep. Marcum did not suffer any serious physical harm.
Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins,78 Ohio St.3d at 386. In this inquiry, the appellate court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). Thus, the court, after viewing the evidence in a light most favorable to the prosecution, must conclude whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Smith (1997), 80 Ohio St.3d 89, 113, rehearing/reconsideration denied (1997), 80 Ohio St.3d 1471, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2903.08(A) provides:
 No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause serious physical harm to another person or another's unborn.
R.C. 2901.22(C) defines "recklessly:"
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
R.C. 2901.01(A)(7) defines "risk:"
 [A] significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist.
R.C. 2901.01(A)(5) defines "serious physical harm to persons" as including:
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
* * *
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
 Applying the foregoing, we find that appellant acted recklessly in leading the high-speed chase throughout Hamilton and its outlying areas. Appellant sped throughout the area for over one half of an hour, consistently driving in excess of posted speed limits. Testimony from the police officers established that, while driving within the Hamilton city limits, appellant sped throughout streets at nearly twice the posted speed limit while pedestrians stood on the sidewalks or even walked in the street.
It was not necessary that the state demonstrate that appellant made contact with Dep. Marcum's vehicle before appellant could be convicted of aggravated vehicular assault. As noted in the Committee Comments to R.C. 2901.22, reckless conduct is based upon a possibility that the offenders conduct is "likely" to cause a certain result, as opposed to "probably" cause the result, which is included in the definition of "knowingly." The Committee Comments state:
 Basing the definition of knowledge on probability and the definition of recklessness on likelihood is intentional. Something is "probable" when there is more reason for expectation or belief than not, whereas something is "likely" when there is merely good reason for expectation or belief.
 Besides disregarding the significant possibility that he would hit a pedestrian or one of the police officers, appellant disregarded the risk that one of the officers might be injured while in pursuit. There is good reason to believe that a police officer might be injured in the course of a high-speed pursuit. This is exactly what happened to Dep. Marcum when he was unable to maintain control of his vehicle.
Appellant claims that Dep. Marcum's injuries were not "serious" because the deputy was quickly released from the hospital and only missed one day of work. Temporary unconsciousness is sufficient to establish a "temporary, substantial incapacity." State v. Czajka (1995), 101 Ohio App.3d 564,574. In State v. Teague (Aug. 12, 1997), Franklin App. No. 97APA02-149, unreported, the victim suffered injuries much like those of Dep. Marcum. In that case, the court found that such injuries constituted "any degree of prolonged or intractable pain," because the victim suffered residual soreness and pain. That victim, like Dep. Marcum, was quickly released from the hospital. Id.
We find that the state presented sufficient evidence to demonstrate that Dep. Marcum suffered "serious physical harm." Due to his accident, he suffered unconsciousness, and he was unable to extricate himself from the car without assistance. He was transported to the emergency room by ambulance, where he was treated for head, neck, and knee injuries. He is unable to remember the details of the accident, and he still suffers pain and headaches from his injuries. The state presented sufficient evidence demonstrating that appellant had perversely disregarded a known risk and thereby caused Dep. Marcum's serious physical injuries.
Appellant further contends that his conviction for aggravated vehicular assault was against the manifest weight of the evidence. As noted above, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins,78 Ohio St.3d at 386-87. Appellant claims that he had no intention of harming Dep. Marcum, and the evidence failed to establish that he caused Dep. Marcum's accident.
Appellant was not charged with specifically intending to harm Dep. Marcum. Rather, he was charged with perversely disregarding the known risk that Dep. Marcum could be harmed in the high-speed pursuit. The evidence clearly showed that appellant did disregard such a risk, and that Dep. Marcum was injured as a result. Had appellant not fled from the police, Dep. Marcum would not have been injured. Appellant recklessly drove through residential streets at a high speed, thereby forcing Dep. Marcum and the other pursuing police to do the same. Appellant's reckless conduct directly led to Dep. Marcum's injuries.
Therefore, we find that appellant's conviction for aggravated vehicular assault is supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 PURSUANT TO O.R.C. 2953.08(C), THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT SENTENCED THE APPELLANT TO MAXIMUM AND CONSECUTIVE TERMS ON EACH CHARGE.
 In his final assignment of error, appellant contends that the sentences imposed by the trial court were not supported by the record. Appellant argues that the trial court failed to make sufficient findings to justify imposing maximum, consecutive terms of imprisonment.
An appellate court may not disturb a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C. 2953.08(G)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. The sentence imposed must be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." R.C. 2929.11(A).
The sentencing court is given wide discretion in determining the most effective way to comply with the purposes and principles of Senate Bill 2. "A reviewing court will not interfere with a sentence unless the trial court has abused its discretion." Statev. Yontz (1986), 33 Ohio App.3d 342, 343. Generally, a trial court does not abuse its discretion when imposing a sentence which is authorized by statute. State v. Beasley (1984), 14 Ohio St.3d 74,75.
Pursuant to R.C. 2929.14(A)(1), for a felony of the first degree, such as felonious assault, the court may impose a prison term of three to ten years. A trial court may impose a prison term of six to eighteen months for a felony of the fourth degree, such as aggravated vehicular assault or failure to comply with an order of a police officer. R.C. 2929.14(A)(4). A trial court may impose the maximum term of imprisonment upon an offender only if the trial court finds on the record, as relevant to this case, that the offender "committed the worst forms of the offense," or the offender "pose[s] the greatest likelihood of committing future crimes." R.C. 2929.14(C).
When reviewing the seriousness of an offender's conduct, the trial court is guided by R.C. 2929.12(B), which lists factors for the trial court to consider. As relevant to the instant case, these factors include:
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 The trial court may also consider "any other relevant factors."
When reviewing whether an offender poses the greatest likelihood of recidivism, the trial court is guided by R.C.2929.12(D), which lists factors for the trial court's considerations. As relevant to the instant case, these include:
 (1) At the time of the offense, the offender was under * * * post-release control * * * for an earlier offense.
 (2) The offender * * * has a history of criminal convictions.
 (3) The offender has not * * * responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refused to acknowledge that the offender has a demonstrated pattern of abuse, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
 The trial court may also consider "any other relevant factors."
The trial court's comments at the sentencing hearing and its judgment entry of sentencing make it clear that the trial court felt that any sentences less than the maximum allowable terms of imprisonment would demean the seriousness of appellant's conduct and that the trial court believed that appellant posed the greatest likelihood of recidivism. The trial court specifically stated that his crimes were the "worst form of the offense," involving a long, high speed chase through two cities and a township, and involving multiple law enforcement agencies. Appellant endangered the lives of numerous individuals, and, in fact, one deputy suffered serious physical harm.
The trial court also found all five of the recidivism factors listed in R.C. 2929.12(D). Appellant was on probation at the time of his offenses, and he had a juvenile and adult criminal history. Appellant had failed court ordered drug treatment programs and had refused other treatment options. He felt no remorse for his offenses, and he placed the lives of numerous pedestrians and police officers in danger.
Upon a thorough review of the record, it is clear that the trial court's findings that appellant committed "the worst forms of the offense" and that appellant posed "the greatest likelihood of committing future crimes," were supported by the record. The trial court's finding that to impose less than the maximum sentence would "demean the seriousness of [appellant's] conduct" was supported by the record. The trial court did not err in imposing maximum sentences.
Appellant further contends that the record did not support imposing consecutive sentences. Pursuant to R.C. 2929.14(E)(3), a trial court may impose consecutive sentences if it makes certain findings. First, the trial court must determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C.2929.14(E)(3); State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001, unreported. Second, the trial court must find at least one of the additional factors listed in R.C. 2929.14(E)(3):
 (a) The offender committed the multiple offenses while the offender was under * * * post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 In the instant case, the trial court found that consecutive sentences were necessary to protect the public and to punish appellant. The trial court found that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and the danger appellant posed to the public. Thus, the initial requirement of R.C. 2929.14(E)(3) was satisfied. Additionally, the trial court found that appellant committed his offenses while under community control sanctions, that he had a history of criminal conduct, and that a single sentence would not adequately reflect the seriousness of appellant's offenses. The record supports these findings by the trial court.
We find that the trial court did not err in imposing consecutive, maximum sentences for appellant's offenses. Accordingly, appellant's fourth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] In "paralleling" appellant, the officers drove along a street parallel to the one appellant was on so as to prevent civilian traffic from crossing into the pursuit and to back up the pursuit in case appellant exited his vehicle in an attempt to escape on foot.