In this consolidated appeal, Frederick Futrell ("appellant") appeals his convictions and sentences entered after jury trial in the Cuyahoga County Court of Common Pleas. Appellant was convicted of Receiving Stolen Property in violation of R.C.2913.15; Possession of Criminal Tools in violation of R.C.2923.24; Failure to Respond to Order in violation of R.C.2921.331; and Felonious Assault on a Police Officer in violation of R.C. 2903.11(A)(2). Appellant urges reversal of his convictions and vacation of imposed sentences claiming evidentiary errors at trial, ineffective trial counsel, verdicts entered against the manifest weight of the evidence and improperly imposed sentences.
On February 23, 1998, appellant was indicted in CR-359671 on charges stemming from incidents which occurred on December 15, 1997, to wit: receiving stolen property; possession of criminal tools; and failure to comply with a police order. Charges stemming from incidents which occurred on January 21, 1998 were entered on March 4, 1998 in CR-360305, receiving stolen property, a vehicle; on March 18, 1998 in CR-360855, felonious assault of a police officer and possession of cocaine; and in CR-361479 with possession of cocaine. Appellant entered pleas of not guilty to the charges against him and the four cases were consolidated for trial which commenced on May 20, 1998.
At trial, the state presented the testimony of twelve witnesses. Three Cleveland police officers of the Fourth District testified as to the incidents of December 15. Patrolmen Williams and Ezzo testified that about 8:00 p.m., during routine patrol, they observed a 1985 Oldsmobile driving erratically and running a red light at Martin Luther King Boulevard and East 116 Street. They activated their lights and siren; pulled the car over; walked toward the car; and observed a black male in the driver seat and a black female in the passenger seat. Officer Ezzo saw the driver's face as he looked over his shoulder and noted he was wearing a multi-colored jacket. As officers reached the rear of the vehicle, it sped off. The officers pursued the fleeing vehicle in their patrol car. During this pursuit, Sgt. Timm saw the fleeing vehicle with the patrol car following. The vehicle turned onto Shale Avenue where the occupants abandoned the car in front of 10314 Shale, leaving the engine running and the doors open. Officer Williams saw the pair flee from the car on foot, but lost sight of them as they ran through the yards. He pursued them on foot through the backyard to the next street but was unable to find either suspect. Officer Ezzo stayed with the abandoned vehicle on Shale where he noted that the steering column was peeled and saw a screwdriver on the front seat. When Sgt. Timm heard the radio report that the suspects had bailed out of the car and were fleeing southbound through yards, he drove past Officers Williams and Ezzo and the abandoned car without stopping and he circled onto the next street. There, a resident directed Sgt. Timm's attention to a man and woman walking on East 103 Street. Officer Timm lost sight of the pair as they turned onto Buckeye Road, but when he reached Buckeye Road he spotted the suspects. The male acted suspiciously, repeatedly looking over his shoulder and attempting to take off his jacket. Sgt. Timm ordered the couple to walk toward him. Although they complied, appellant protested, so Sgt. Timm drew his pistol and ordered appellant to his knees and handcuffed him. At that point, Officer Williams arrived on the scene, identified the suspects as the pair from the car, and advised appellant of his Miranda rights. Appellant and his girlfriend, Tymika Gregory, were returned to the location of the abandoned car at 10314 Shale where Officer Ezzo identified appellant, recognized his clothing and verified that appellant and his girlfriend were the pair who fled. Follow-up investigation determined that the owner of the 1985 Oldsmobile was Terry Armstrong-Ryan who testified that she reported the car stolen from the Rusty Nail restaurant in Kent, Ohio, sometime between four and eight o'clock p.m. on December 15.
The state presented the witnesses' testimony to the events of January 21, 1998. First, Laverne Baker testified that in the early morning of January 21, her upstairs neighbor, Pamela Dillard, woke her because an unfamiliar car had been sitting in their driveway. From her kitchen window Ms. Baker saw an unfamiliar car with four people sitting in it. She observed the occupants get out of the car, stop cars out in front and return back, activities which led her to believe the occupants were drug trafficking. She became scared when she saw the column of the car was peeled, indicating that it was stolen, so she called the police. Although the police responded quickly, only three occupants remained in the car. The police ordered the occupants out of the car, but the car pulled forward toward the garage. With that, the police drew their guns and ordered the car to stop, but it continued to pull forward then back. After the fourth time, the car slid against the side of the house causing the female officer to jump out of the way to avoid being hit. At that point, Ms. Baker moved away from the window.
Officer Perron of the Cleveland Police Department and her partner Officer Jill Pedersen testified that about 1:25 a.m. on January 21, while on routine patrol, they observed two males standing at the driver's window of a Cadillac in the parking lot of a closed convenience store at East 93 Street and Miles Avenue in what they believed to be a drug transaction. When the two pedestrians saw the police, they walked away, and the driver got out of the car and went to the payphone. The officers "ran" the license plate and determined the Cadillac was listed to Demetrius Ivey; but it checked out okay, so they continued their patrol to the East 131 Street and Miles area. Within minutes they received a radio dispatch indicating that the Cadillac was reported to be in the driveway at 9416 Miles and was unfamiliar to the homeowner. Upon arriving at the address, they saw the Cadillac and pulled into the driveway behind it. A police helicopter hovered overhead with spotlights. The officers exited their patrol car to investigate and verbally ordered the three male occupants to show their hands. The passengers complied but appellant, the driver, attempted to get out. With her gun drawn, Officer Perron ordered appellant back into the car; he complied, he closed and locked the door. They approached the vehicle from the rear with their weapons drawn and ordered appellant to open the doors. In an apparent attempt to escape, appellant refused, put the car into drive and pulled forward in the driveway to the garage attempting to go around the corner of the house. He stopped when there was nowhere else to go, put the car into reverse and backed up. With that, the officers back pedaled on either side of the car. Then, appellant, while looking right at Officer Perron, cut the wheel sharply so the rear of the car was headed toward the house and almost pinned her between the vehicle and the house. Officer Perron was forced to run forward in front of the car to avoid being pinned between the house and the vehicle as it slid along the side of the house. As two additional officers arrived and approached from behind their zone car, appellant gunned the vehicle forward toward Officer Perron who was forced to get around the corner of the house to avoid being hit. During the incident Officer Perron was in fear of physical injury because she believed appellant was deliberately and intentionally attempting to run her over. Finally, the car stopped. The passengers got out with their hands up and were handcuffed and detained. Appellant was handcuffed and advised of his rights by Officer Rodriguez and was placed into custody. Officer Perron remained in cover position and witnessed Officer Rodriguez remove a large plastic film container from appellant's clothing which they believe contained sixteen rocks of suspected crack cocaine.
Officer Rodriguez testified that when he and his partner responded to the scene, they ran up the driveway, pointed their guns at the vehicle and ordered the appellant to stop. The passengers had their hands up in submission, but the vehicle accelerated toward Officer Perron, who, but for her evasive actions, would have been struck. He did not fire his weapon because he did not want to chance cross-fire between officers. During the arrest, appellant was uncooperative and verbally abusive. At the station, it was noted that appellant's handcuffs had been pried open with a medical scissors and during booking a straight shooter" was found in appellant's pants pocket by Frederick Reeves, the Institutional Guard at the Fourth District Police Station. Reeves said because he believed appellant may have swallowed dope, in conformance with protocol, appellant was sent to the hospital for examination. Eugenia Whitt, Scientific Examiner of the Cleveland Police Forensic Laboratory, found drug residue on the straight shooter but determined that the sixteen rocks were negative for drugs. The State rested and appellant moved for acquittal pursuant to Crim.R. 29 which was denied by the court.
The defense called four alibi witnesses in defense of the charges which stemmed from the incident on December 15, 1997. First, Rose Wells, appellant's aunt, testified that about 7:15 p.m. on December 15, appellant called for a ride, she picked up appellant with his girlfriend, Tymika Gregory at 7:30 p.m. and took the couple to East 104 Street off Buckeye Road. She was able to remember the date because it was the night of the Christmas rehearsal at church. On cross-examination, Ms. Wells conceded that she did not contact the police to tell them that appellant could not have been involved in the incident because he was with her.
Next, James E. Smith, Jr., who lives at 10314 Shale Avenue where the vehicle was abandoned, testified that on December 15 about 6:00 p.m., he saw appellant walking with his pregnant girlfriend down East 116 Street toward the grocery store. Then, about 7:30 or 8:00 p.m. there was a commotion and several police were in his yard telling him that these two had hopped the metal and wooden double fifteen-foot fence in his yard. Police cars pulled up with appellant in one vehicle and the pregnant female in the other. Smith did not indicate to the police that he recognized the pair from his earlier encounter. Smith, a Correctional Officer at the County Jail coincidentally encountered appellant in his pod and asked him about the events for which he was in jail, which led to Smith's recollection of seeing appellant on that evening. On cross-examination, Smith admitted that there are other ways to get over to Rosehill Avenue not involving jumping over his fifteen-foot fence. He conceded that appellant's arrest occurred two hours after he saw the couple ten blocks away near the Finast store.
Sandra Glenn, appellant's mother, testified that appellant and Tymika Gregory were at home with her the entire day of December 15 until they left for the store about 5:30 p.m. About twenty minutes after they returned from the store, appellant's aunt, Rose Wells, picked the couple up to take them to Tymika's friend's house. Ms. Glenn said that on January 21, 1998, about ten minutes after appellant came in from work, he got a call about his wallet and was trying to get a ride to pick it up.
Finally, Tymika Gregory, after waiving her right to remain silent, testified that on December 14 and 15 she was with appellant at his mother's house until the evening of the fifteenth when she and appellant went to the store a few blocks away. After they returned, appellant called his aunt requesting a ride to her friend's house on East 104 Street. His aunt dropped them off, but, because the friend was not home, she and appellant walked to another friend's house, but no one was home either. When they started walking back they were stopped by a police officer who accused them of jumping out of a stolen car and hopping some fences. She verified that appellant was wearing a multi-colored jacket and she was wearing a black jacket that night.
Then, the defense called Gerald Wysinger, eyewitness to the events surrounding appellant's arrest on January 21. At 1:45 a.m. Wysinger, who runs recovery centers for alcoholics, was at the Miles Avenue bus stop between East 93 and 94 Streets when he observed a police patrol car pull into the driveway behind a Cadillac blocking it. A white female police officer with a gun got out of the patrol car. He saw the car pull up, stop and come back. The Cadillac swayed and slid, so he hoped it would not slide into the officer. He saw that she was able to jump out of the way. The car did not accelerate fast nor did he see the car drive forward toward the police officer. On cross-examination Wysinger admitted that he gave his card to a lady at the scene in case they needed him, but although he was an eyewitness, he did not volunteer his name to the police.
Next, Paula Chism, sixteen-year-old friend of Tymika Gregory, testified that about midnight January 21, she was with an acquaintance, Willie Warfield, sitting in the gray Cadillac with the stripped steering column at East 114 Street and Benham. Warfield explained to her that the steering wheel was peeled because his Cadillac had been previously stolen and it was not yet repaired. Appellant walked up to the car while they were parked and offered Warfield ten dollars for a ride to the Lenroc Lounge to pick up his wallet. Warfield agreed and appellant hopped into the backseat. When appellant asked Warfield about the stripped steering column, Warfield told appellant the same story, the car had been stolen previously. Warfield dropped her off at a friend's house, appellant then chose to drive because he determined that Warfield did not have a driver's license.
Finally, Demetrius Ivey testified that at 6:00 a.m. in January 1998, he discovered his 1989 Cadillac Sedan DeVille was stolen from his garage at East 142 Street and Kinsman in Cleveland Ohio.
At the close of the evidence, the defense rested and renewed the motion for acquittal which was denied by the court. In CR-361479, the jury returned a verdict of not guilty of possession of drugs, but found appellant guilty on all remaining counts against him. A pre-sentence report was prepared and the court postponed sentencing to obtain a mitigation report from the Psychiatric Clinic. On July, 15, 1998, appellant was sentenced in case CR-359671 to a term of imprisonment of eighteen months on count one, receiving stolen property; twelve months on count two, possession of criminal tools; and six months on count three, failure to obey the order of a police officer. Appellant was sentenced in CR-360305 to a term of imprisonment of eighteen months for receiving stolen property; and in CR-360855, he was sentenced to a term of imprisonment of five years for felonious assault on a police officer. All sentences were imposed to run concurrently. From these convictions and sentences, appellant brings this appeal and advances four assignments of error for our review.
 I. THE APPELLANT WAS PREJUDICED BY THE ADMISSION OF IMMATERIAL AND IRRELEVANT EVIDENCE OF OTHER ACTS.
 II. THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND WAS THEREBY DENIED A FAIR TRIAL.
 III. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS, HE HAS BEEN DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND OF OHIO.
 IV. THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM PRISON TERMS WITHOUT FINDING THAT THE APPELLANT MET THE MANDATORY STATUTORY CONDITIONS FOR IMPOSING A MAXIMUM SENTENCE.
In his first assignment of error appellant complains that he was prejudiced by the admission of irrelevant evidence of "other acts." Specifically, appellant complains that the testimony of Laverne Baker, Frederick Reeves, and all testimony regarding the counterfeit cocaine found on him irreparably harmed his defense and was so prejudicial as to warrant reversal.
Evid.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evidence of crimes or other acts is admissible only when it is relevant to one of the matters listed in the rule, such as motive or intent. State v. DeMarco (1987), 31 Ohio St.3d 191, 194. "The principle underlying Evid.R. 404(B) is that evidence of other acts is simply so prejudicial that to allow it outweighs its value as relevant evidence." State v. Prokos (1993), 91 Ohio App.3d 39,43.
In a criminal case in which a defendant-appellant alleges that it was prejudicial error to allow the jury to hear certain testimony, the reviewing court must first determine if it was error to allow the jury to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Davis (1975),44 Ohio App.2d 335, paragraph three of the syllabus.
First, we find no error in the admission of Laverne Baker's testimony that from her observation of the activity of the occupants of the car she concluded that drug trafficking was taking place. Other crimes, wrongs or acts as contemplated by the statute are those which are independent of the offenses for which a defendant is on trial. Thus, "other acts" as prohibited by Evid.R. 404(B) would include this witness' description of the observed behavior of the participants who were engaged in the suspicious activity which ultimately led to the arrest of appellant. As such testimony does not reveal an "other act" of appellant to show that he acted in conformity therewith, there was no error in allowing the jury to hear this testimony.
Next, appellant complains of the testimony of Fredrick Reeves, a guard at the Fourth District jail, which indicated that appellant had been "through the district several times before, so we had known him." Upon objection by defense counsel, the court properly instructed the jury to disregard the statement. With the proper curative instruction given, [a] jury is presumed to follow the instructions, including curative instruction, given it by a judge.!! Appellant has presented no evidence to indicate that the jury failed to follow the curative instruction given by the judge. As such, we find no reversible error.
Finally, appellant complains that testimony regarding the counterfeit cocaine found in his possession was so prejudicial as to warrant reversal. In this case, appellant did not object to the testimony now complained of and, as such, any claimed error is waived on appeal. See State v. Underwood (1983), 3 Ohio St.3d 12,13. Nonetheless, a criminal defendant's failure to object would be reviewable if the error amounted to plain error under Crim.R. 52(B). In order to be reviewable by this court, however, appellant must show that the outcome of the trial would have been different if the claimed error had not occurred. Underwood, supra
at the syllabus. Thus, an alleged error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
The record demonstrates that appellant was acquitted of the drug charge and competent, credible evidence exists in the record to support his convictions for receiving stolen property, possession of criminal tools, failure to obey the order of a police officer and felonious assault on a police officer, all charges unrelated to evidence of drug activity. In light of the whole record, we do not see such prejudice to the appellant as to affect his substantial rights. Therefore, we find no reversible error.
Accordingly, we find appellant's first assignment of error to be without merit.
In his second assigned error, appellant complains that he was denied his constitutional right to effective assistance of counsel because counsel failed to object to the "inadmissible evidence of other acts" and failed to request that the charges stemming from the December 15 incident be tried separately from the January 21 incident.
To prevail on a claim of ineffective assistance of counsel, a defendant must show that: 1) there was a substantial violation of any of defense counsel's essential duties to his client; and 2) defendant was materially prejudiced by counsel's ineffectiveness.State v. Lytle (1976), 48 Ohio St.2d 391, 396-397. To warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington (1984), 466 U.S. 668,694. Moreover, in reviewing a claim of ineffective assistance of counsel, a court should presume that a properly licensed attorney executes his legal duty in an ethical and competent manner. Statev. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965),2 Ohio St.2d 299.
Counsel's failure to object to "other act" evidence as claimed by appellant does not demonstrate a substantial violation of counsel's duty to his client where the evidence complained of cannot be shown to support his conviction. As discussed above, appellant was acquitted of the drug charge brought against him and sufficient evidence exists in the record to support, his convictions for the charges against him.
Appellant contends that counsel's failure to object to the joinder of the cases for trial denied him a fair trial. However, the record is clear that counsel discussed the consolidation of the matters for trial with appellant and in open court stated: "I've discussed the prosecution's motion with Mr. Futrell, and wehave no objection to the consolidation of the two, the incidentof 12-15 and 1-21 to be consolidated." (Emphasis added.)
The record clearly demonstrates that throughout all the proceedings in the trial court, appellant took an active part in his own defense and filed multiple pro se motions with extensive citation to legal authority in support of his position. As such, we conclude that appellant acquiesced to a consolidated trial and cannot now be said to have been prejudiced by his counsel's failure to object. Moreover, the law favors joinder as it conserves time and expense, diminishes inconvenience to public authorities and witnesses, promptly brings the accused to trial, and minimizes the possibility of incongruous results in successive trials before different juries. See State v. Cotton
(July 14, 1994), Cuyahoga App. Nos. 64361, 64378, unreported;State v. Schaim (1992), 65 Ohio St.3d 51, 58.
In evaluating a claim that offenses were erroneously joined, the reviewing court must consider (1) whether the defendant's rights were prejudiced; (2) whether, prior to trial, the defendant presented the trial court with sufficient information to weigh the considerations favoring joinder against the defendant's right to a fair trial; and (3) whether, in light of the information presented to the court, it abused its discretion in refusing to separate the charges for trial. See State v.Czajka (1995), 101 Ohio App.3d 564, 577. Key issues are the complexity of the evidence and whether the jury is able to segregate the proof required on each charge. Id.; State v. Lott
(1990), 51 Ohio St.3d 160, 163-164. State v. Dickerson (Oct. 16, 1997), Cuyahoga App. Nos. 71619, 71748, unreported.
In this matter, we are unable to conclude that appellant's rights were prejudiced. He at no time objected to the joinder and there is no basis from which we may determine that plain error has occurred. The offenses were of similar character and they occurred within a relatively short time period. The evidence pertaining to the offenses was not confusing or complex but, rather, was simple and direct. Most significantly, the jury acquitted defendant of the charges set forth in CR-361479, clearly demonstrating that it was able to segregate and separately consider the evidence adduced in relation to each individual charge.
Accordingly, we do not find trial counsel's performance deficient. Appellant's second assignment of error is without merit.
In his third assignment of error, appellant complains that his conviction were against the manifest weight of the evidence.
In State v. Martin (1983), 20 Ohio App.3d 172, the court set forth the test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered * * *." See Tibbs v. Florida (1982), 457 U.S. 31,72 L.Ed.2d 652, 102 S.Ct. 2211. Martin, supra at 175.
In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines and may be taken into account by the reviewing court: "the reviewing court is not required to accept as true the incredible * * *; whether the evidence is uncontradicted * * *; whether a witness was impeached * * *; what was not proved * * *; the certainty of the evidence * * *; the reliability of the evidence * * *; whether a witness' testimony is self-serving * * *; and, whether the evidence is vague, uncertain, conflicting or fragmentary." State v. Mattison (1985), 23 Ohio App.3d 10, 14. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, conflicting evidence was presented. However, upon a review of the entire record before us, because the credibility of the witnesses is primarily for the trier of fact, we do not find that jury so lost his way in determining from the evidence that appellant was the person who, on December 15, 1997, was the driver of the stolen Oldsmobile which contained the screwdriver and who failed to comply with the police order. Further, credible evidence supports the conclusion that on January 21, 1998, appellant committed the offense of receiving stolen property, the 1989 Cadillac, and attempted to cause physical harm to Patrolman Perron by means of a deadly weapon: an automobile. Thus, it cannot be said that in resolving conflicts in the evidence, the jury clearly so lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, we find appellant's third assignment of error to be without merit.
In his fourth assignment of error, appellant complains that the trial court failed to make "explicit findings" when it imposed the maximum prison terms on his convictions thus violating the requirements of R.C. 2919.14(C).
Pursuant to R.C. 2953.08(G)(1)(a) and (d), an appellate court may only reverse a sentence imposed under Senate Bill 2 if it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Cincinnati Bar Assoc. v.Massengale (1991), 58 Ohio St.3d 121, 122.
R.C. 2929.19(B)(2) states that:
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum sentence.
R.C. 2929.14(C) states:
 Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug of fenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
To impose the maximum sentence, there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. See Statev. Banks (Nov. 20, 1997), Cuyahoga App. No. 72121, unreported;State v. Beasley (June 11, 1998), Cuyahoga App. No. 72853, unreported. While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. See Id., State v. Assad (June 11, 1998), Cuyahoga App. No. 72648, 72649, unreported; State v.Boss (Sept. 15, 1997), Clermont App. No. CA96-12-107, unreported;State v. Fincher (Oct. 14, 1997), Franklin App. No. 97 APA03-352, unreported.
In accordance with R.C. 2929.14(C) the trial court found appellant's chances for recidivism to be high. A review of the trial court's remarks at sentencing indicate that the judge considered appellant's pre-sentence report and the Court Psychiatric Clinic Report, which indicate a long history of mental illness issues, as well as substance abuse issues and considered the facts brought out at trial. Thus, the trial court lawfully imposed the maximum term for a single offense by finding that appellant satisfied one of the criteria listed in R.C.2929.14(C). See State v. Edmonson (1999), 86 Ohio St.3d 324, 329. Further, the record reviewed by the trial court demonstrates that appellant has a history of criminal convictions; he has not responded favorably to sanctions previously imposed for criminal convictions; and he has failed to show remorse for the offenses. See R.C. 2929.13(D).
Although we would encourage the trial courts to be explicit in their findings to support the imposition of a maximum sentence, we find this record more than justifies the finding of the trial court. Accordingly, appellant's fourth assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Apellate Procedure.
TERRENCE O'DONNELL, P.J. and MICHAEL J. CORRIGAN, J.,CONCUR.
 __________________________________ TIMOTHY E. McMONAGLE JUDGE