[Cite as *State v. Lindsay*, 2018-Ohio-5245.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2018 CA 0005 |
| LAMONT A. LINDSAY, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  2017 CR 0617


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      December 24, 2018


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

GARY BISHOP                         RANDALL E. FRY
PROSECUTING ATTORNEY                10 West Newlon Place
JOSEPH C. SNYDER                    Mansfield, Ohio  44902
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

*Wise, John, P. J.*

{¶1}    Appellant Lamont A. Lindsay, Jr. appeals his conviction on three counts of felonious assault, two counts of attempted murder,, and one count of improperly handling a firearm in a motor vehicle entered in the Richland County Court of Common Pleas following a jury trial.

{¶2}    Appellee is State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}    On April 11, 2017, Shameek Price was sitting in a rented Dodge Charger when he was shot. (T. at 255). All he could see was the muzzle flash from the gun. (T. at 258-259). The shooting took place at 521 Daisy Street in Mansfield. (T. at 226, 260). Officer Bryce Edwards was dispatched shortly after 10:00 pm to Ohio Health Mansfield in reference to the shooting. (T. at 207). Mr. Price was suffering from multiple gunshot wounds when Officer Edwards found him. (T. at 209). At the scene of the shooting, Police collected 9mm Luger bullet casings and took pictures of broken glass from a car window, as well as a trail of blood at the scene. (T. at 230-234). A total of thirteen shell casings were recovered from the scene. (T. at 236-237). Mr. Price was shot five times in his left arm and eight times in his abdomen. (T. at 263).

{¶4}    On April 11, 2017, Andrew Hawthorn was sitting at home when he heard a loud bang outside. (T. at 122). When he walked outside, his neighbors told him that a car had hit his car that was parked in front of his house. (T. at 122). When Mr. Hawthorn examined his car, he saw damage to the front driver side door. (T. at 124). Mr. Hawthorn's neighbors told him that a gold Buick Century hit his car. (T. at 125). Mr. Hawthorn's girlfriend then called the police. (T. at 130). He got in his car to go look for the offending

vehicle, but his car would not work so he took his girlfriend's car which was a silver Chrysler Pacifica. *Id.* Mr. Hawthorn made a best guess as to what direction the gold Buick Century was going and headed that way. (T. at 126-128). As Mr. Hawthorn was driving around, he spotted a gold car with heavy front-end damage and tried to catch up to it. (T. at 128-129). As he followed the car, he could see there was only one occupant. (T. at 130). The vehicle pulled over in front of a house, so Mr. Hawthorn pulled alongside and rolled down his window. (T. at 131). Mr. Hawthorn then accused the other driver of hitting his car and fleeing. *Id.* He immediately recognized the other driver as Appellant Lamont Lindsay. (T. at 133). Mr. Hawthorn had seen Appellant on numerous other prior occasions because Appellant's mother is married to one of Mr. Hawthorn's cousins. (T. at 134). As Mr. Hawthorn was yelling at Appellant, Appellant drew a gun and began firing at Mr. Hawthorn. (T. at 135-136). Appellant shot at Mr. Hawthorn three times. (T. at 138). After the third shot, Mr. Hawthorn "floored the car" and took off. *Id.* Mr. Hawthorn then called police. (T. at 139).

{¶5} Officer Jeff McKinley was dispatched to the shooting on Daisy a little after ten o'clock on April 11, 2017. While en route he was redirected to the hit skip incident involving Mr. Hawthorn. (T. at 267). When he arrived, he and Officer Richland spoke with Andrew Hawthorn. (T. at 270-271). After Andrew Hawthorn talked to the police, he called his mother, who then came to his house. (T. at 144-145). The two of them then went to Appellant's mother's house. (T. at 148). After speaking with Mr. Hawthorn and his mother, Appellant's mother called Appellant. *Id.* During the phone call Appellant admitted to hitting Mr. Hawthorn's vehicle. (T. at 180). He also said that he had just taken care of "the

business with the dude in the Charger", and he thought Mr. Hawthorn was "with them." (T. at 150, 180).

{¶6} The following day on April 12, 2017, Mansfield Police and the U.S. Marshalls located and arrested Appellant at a Red Roof Inn in Lorain County. (T. at 284-286). When Police entered Appellant's hotel room and took him into custody, they found a Bersa 380 handgun sitting on the bed. (T. at 288). Police also located Crown Royal bags with 9mm ammunition inside and found a 9mm Sig firearm in a backpack wrapped in clothing. (T. at 288-289, 291). The 9mm firearm had a fully loaded magazine with fifteen rounds and another in the chamber. (T. at 292). Police also found two boxes of 9mm ammunition. (T. at 295-296). One of the boxes was full with fifty rounds and the second was missing fifteen rounds, containing only thirty-five rounds. Inside the backpack Police found a laser sight for a gun. (T. at 358).

{¶7} Also on April 12, 2017, police began to examine the Dodge Charger that Mr. Price was driving in order to locate any of the bullets fired into it. (T. at 320). Police located two slug fragments, one from the front passenger door of the car and the other from the front passenger seat. (T. at 326-327). Two projectiles were taken from the center console, one from the driver's seat, and one on the rear passenger floorboard. (T. at 329-330).

{¶8} Police also recovered Appellant's vehicle and conducted a search of it. (T. at 344-345). Police found the packaging for a laser sight that could be mounted on any firearm so long as it had a rail. (T. at 345-346). The laser sight found in Appellant's backpack fit perfectly into the packaging found in his car. (T. at 358). The laser sight was

also functional. (T. at 359). Police also located batteries and Allen wrenches that would have been used for the laser sight. *Id.*

{¶9} The 9mm Sig firearm was found to be operable when tested by BCI (T. at 382). BCI also identified all thirteen shell casings as having been ejected from the 9mm Sig firearm, and all of the bullets recovered from Mr. Price's Dodge Charger were identified as having been fired from the 9mm Sig firearm. (T. at 384-385).

{¶10} Appellant was indicted as follows:

1. Count I, Felonious Assault pursuant to R.C. §2903.11(A)(Z) along with a firearms specification.

2. Count II, Felonious Assault pursuant to R.C. §2903.11(A)(1) along with a firearms specification.

3. Count III, Improperly Handling a Firearm in a Motor Vehicle pursuant to R.C. §2923.16(A).

4. Count IV, Felonious Assault, R.C. §2903.11(A)(2) along with a firearms specification.

5. Count V, Attempted Murder, R.C. §2923.02(A) along with a firearms specification.

6. Count VI, Attempted Murder, R.C §2923.02(A) along with a firearms specification.

{¶11} Appellant pled not guilty to the indictment, and a jury trial was set for November 9, 2017.

{¶12} When Appellant was in custody, he was interviewed by Police and admitted that the gun recovered from the hotel room was the gun used in the shooting of Mr. Price.

(T. at 434). He also explained that he shot Mr. Price in retaliation for the shooting of his "brother." (T. at 431-437). While Appellant was in custody he wrote letters to people on the outside. (T. at 394-395). In one letter he wrote, "I did some real shit, so I gotta do real time." (T. at 407). He also wrote, "Bottom line tho (sic), I made my bed, so I don't mind sleeping in it." (T. at 415).

{¶13} On October 16, 2017, Appellant filed a motion pursuant to Crim.R. 14.

{¶14} On October 26, 2017, the State of Ohio filed a Memorandum in response to Appellant's motion.

{¶15} On November 3, 2017, a judgment entry is filed overruling Appellant's motion.

{¶16} The jury trial set for November 9, 2017, was continued and ultimately commenced on December 7, 2017.

{¶17} After hearing evidence and deliberating, the jury found Appellant guilty on all counts of the indictment.

{¶18} On December 13, 2017, the trial court held a sentencing hearing. The trial court found Counts I and II were allied offenses to Count V. The court also found Count IV was an allied offense to Count VI. The court then sentenced Appellant to eleven (11) years on Count V, nine (9) years on Count VI, and eighteen (18) months on Count III, and sic (6) years on the firearm specifications, all to run consecutive to each other, for an aggregate sentence of 27 ½ years, 6 of which are mandatory prison time. Appellant was also ordered to serve 5 years post-release control.

{¶19} Appellant now appeals, raising the following errors for review:

## ASSIGNMENTS OF ERROR

{¶20} "I. THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION ON COUNT I, FELONIOUS ASSAULT, COUNT II, FELONIOUS ASSAULT, AND COUNT V, ATTEMPTED MURDER AS THE COUNTS PERTAIN TO THE SHOOTING OF SHAMEEK PRICE.

{¶21} II. THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF COUNT IV, FELONIOUS ASSAULT AND COUNT VI, ATTEMPTED MURDER AS THE [SIC] PERTAIN TO THE SHOOTING OF ANDREW HAWTHORNE.

{¶22} III. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER PURSUANT TO OHIO CRIMINAL RULE 14.

### I., II.

{¶23} In his first and second assignments of error, Appellant argues that his convictions on Counts I, II, IV, V and VI are not supported by sufficient evidence. We disagree.

{¶24} Counts I (felonious assault), II (felonious assault), and V (attempted murder) involve the shooting of Shameek Price.

{¶25} Counts IV (felonious assault) and VI (attempted murder) involve the shooting of Andrew Hawthorne.

{¶26} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*; *see also McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010-Ohio-1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720, ¶ 68.

**{¶27}** Appellant was convicted of attempted murder and felonious assault.

**{¶28}** R.C. 2903.02(A), Murder, provides, "No person shall purposely cause the death of another."

**{¶29}** R.C. 2923.02(A) provides a definition of attempt: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶30}** Thus, a person is guilty of attempted murder when he or she "purposely \*\*\* engage[s] in conduct that, if successful, would constitute or result in" the purposeful killing of another. R.C. 2923.02(A); *see, also, State v. Kidder*, 32 Ohio St.3d 279, 283, 513 N.E.2d 311, 316 (1987).

**{¶31}** The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus, *overruled in part by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977). In defining substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131–32, 357

N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." *Id.* at paragraph one of the syllabus. Rather this test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted.

**{¶32}** To prove felonious assault, the state was required to show Appellant knowingly caused or attempted to cause physical harm to Price with a deadly weapon, here the weapon being a firearm. Physical harm is any injury or illness, regardless of gravity or duration. R.C. §2901.01(A)(3).

**{¶33}** Here, the testimony presented at trial showed that Appellant, during a telephone conversation with Andrew Hamilton, told Hamilton that he "had just took care of the business with the dude in the Charger …". (T. at 150, 180). Further evidence showed that Shameek Price was in a Charger when he was shot approximately thirteen times.

**{¶34}** Evidence was also presented that when Appellant was arrested he was in possession of the weapon used to shoot Shameek Price. A laser sight for a firearm was found in Appellant's backpack and the packaging for the laser sight was found in Appellant's vehicle. (T. at 358).

**{¶35}** Additionally, when questioned by the police, Appellant explained that he believed Shameek Price was involved in the kidnapping and shooting of his "brother" Keyshawn Johnson (T. at 442-443).

**{¶36}** Appellant also admitted that he was in possession of the gun used in the shooting of Shameek Price. (T. at 434). He also admitted to being in the gold Buick involved in the automobile crash on Sackman. (T. at 435, 449). Appellant also told the police where they could locate the Buick. (T. at 436).

**{¶37}** Andrew Hawthorne also testified that he was at home sitting on his couch when he heard a loud bang, and when he went outside he discovered that his car had been struck by another vehicle. (T. at 122-124). Neighbors informed him that the hit and run driver was in a gold Buick. (T. at 125). Hawthorne then got in another vehicle and went in search of the gold Buick, which he found. (T. at 131). Hawthorne recognized Appellant in the vehicle. (T. at 133). Hawthorne was attempting to talk to Appellant through their rolled down windows when Appellant pointed a gun at his car and began firing shots at him and his car. (T. at 169). Hawthorne, who was not hit by any of the bullets, sped off and ultimately informed the Mansfield Police Department of what had occurred. (T. at 169).

**{¶38}** A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724–725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266–1267.

{¶39} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP–604, 2003–Ohio–958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP1238, 2003–Ohio–2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096.

{¶40} Based upon the foregoing and the entire record in this matter, and viewing this evidence in a light most favorable to the State, a rational trier of fact could have found Appellant guilty of the crimes as charged.

{¶41} Based on the foregoing, we find Appellant's first assignment of error not well-taken and hereby overrule same.

### III.

{¶42} In his third assignment of error, Appellant argues the trial court erred in not granting his motion for relief from prejudicial joinder. We disagree

{¶43} Joinder of offenses is governed by Crim. R. 8(A), which states offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive

trials, and diminish inconvenience to witnesses. *See, State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (8th Dist. Cuyahoga 1995).

**{¶44}** If similar offenses are properly joined pursuant to Crim.R. 8(A), the accused may move to sever the charges pursuant to Crim.R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Strobel*, 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist. Henry 1988).

**{¶45}** To prevail on a claim to sever counts, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so it could weigh the considerations favoring joinder against the potential prejudice to the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), *citing State v. Hamblin*, 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476 (1988) and *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964).

**{¶46}** A defendant has not demonstrated prejudice where: (1) if the counts were severed, evidence of alleged misconduct from each count would be admissible in separate trials, and, if not (2) if such evidence would not be admissible, the evidence of each count is simple and distinct. *Id.*

**{¶47}** In the instant case, we find the evidence of each count would have been admissible in separate trials. The two shootings also occurred close in time. Further, evidence of the search and discovery of the firearm found in Appellant's room would have

been admitted in each trial.  While the indictment involved two separate incidents and two separate victims, most of the witnesses were involved as to each victim.

**{¶48}** The trial court clearly laid out each separate offense as set forth in the indictment in the jury instructions. (T. at 486-497).  Further, the court instructed the jury each of the offenses constituted a separate and distinct matter, and the jury must consider each charge separately, uninfluenced by their verdict as to the other charges. (T. at 498).

**{¶49}** Appellant argues he was prejudiced by joinder because Shameek Price was unable to identify him as the person who shot him. However, we find, as set forth above, that the State presented sufficient evidence as to both incidents and victim for the jury to find culpability separately as to each of the separate crimes.

**{¶50}** We find Appellant has not demonstrated prejudice from joinder of offenses. Appellant's third assignment of error is overruled.

**{¶51}** For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J., concur.

JWW/d 1217